**In the Matter of David TOON, Appellant.**

**No. 11148.**

District of Columbia Court of Appeals.

Argued Aug. 27, 1976.

Decided Oct. 1, 1976.

Jeffrey Freund, Washington, D. C., with whom Frederick H. Weisberg and W. Gary Kohlman, Washington, D. C., were on petition for appellant.

Earl J. Silbert, U. S. Atty., Washington D. C., with whom John A. Terry and Robert M. McNamara, Jr., Asst. U. S. Attys., Washington, D. C., were on opposition for appellee. William D. Pease and Carol E. Bruce, Asst. U. S. Attys., Washington, D. C., also entered appearances for appellee.

Before REILLY,* Chief Judge, KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS and MACK, Associate Judges, and PAIR, Associate Judge, Retired.

## ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing and/or rehearing en banc of the order filed herein on August 12, 1976, which provided as follows:

*BEFORE:* Gallagher and Nebeker, Associate Judges, and Pair, Associate Judge, Retired.

## ORDER

*On consideration of appellant's motion for summary reversal or for a stay of the line-up order pending resolution of*

---

previous *intent* to commit a robbery?" (Emphasis in original.)

* Reilly, Chief Judge, Retired as of September 27, 1976.

* Associate Judge Gallagher did not participate in the foregoing order.

*this appeal and of appellee's motions for summary affirmance and for vacation of the stay order of the Superior Court, it is*

*ORDERED that appellant's motion be denied and it is*

*FURTHER ORDERED that appellee's motion for summary affirmance in light of this Court's opinion in Wise v. Murphy, D.C.App., 275 A.2d 205 (1971) as modified by United States v. Dionisio, 410 U.S. 1 [93 S.Ct. 764, 35 L.Ed.2d 67] (1973) and United States v. Mara, 410 U.S. 19 [93 S.Ct. 774, 35 L.Ed.2d 99] (1973) is hereby granted and the order on appeal herein is affirmed.*

## PER CURIAM

and of the opposition thereto by appellee, the United States, and it appearing that a majority of the members of the motions division and of the en banc court are not in favor of granting appellant's aforesaid petitions, it is

ORDERED that appellant's petitions for rehearing and/or rehearing en banc are denied.

Statement of Associate Judge GALLAGHER of Reasons for Voting for Rehearing En Banc. Associate Judges KELLY, FICKLING and MACK join in this statement.

This is an unusually important case in criminal law involving the liberty of the individual and the scope of grand jury authority. These issues both cut deeply into the fabric of our society. The law made in this case, because of the nature of the issue, will in the future necessarily apply wholesale to persons innocent of crime. The individual who is involved in this dis-

cussion is neither a defendant nor under arrest.

I regret that a majority of the court by a vote of 5–4 has not thought this case of sufficient importance to be heard en banc.[1] Not only that, but these grave issues are being airily treated by a mere seven-line judgment signed by only two judges, with no rationalization of why the authorities there cited[2] are considered controlling here on these far-reaching questions. Furthermore, at a minimum, there is a most serious question as to whether the panel is in direct conflict with the en banc decision of this court on lineups in *Wise v. Murphy*, D.C.App., 275 A.2d 205 (1971).

I am troubled, also, because this same majority recently decided (by a vote of 5–4) sua sponte to go en banc in a case presenting the sufficiency of the evidence in a misdemeanor conviction of street solicitation for prostitution. (D.C.Code 1973, § 22–2701). *See Diane Dinkins v. United States*, No. 7303, en banc decision pending.

I am unable to equate these actions of the court; nor can I fathom the standard of judicial values which has been applied.

This being a statement of reasons for voting to go en banc, I do not intend to write a full-blown opinion on the merits. Yet I do think it important to lay out the issues which were involved in this case. I say this because, to me, this case has a reach warranting consideration by the Supreme Court. It goes well beyond that Court's decisions in *Dionisio* and *Mara, supra*, and, if allowed to stand, may put grand juries on the way toward unlimited authority over witnesses appearing before them, the Fourth Amendment notwithstanding.

---

1. In earlier years we went en banc on a very similar issue and not only that but the court there arrived at a conclusion just the opposite of that reached here. *Wise v. Murphy*, D.C. App., 275 A.2d 205 (1971). But more about that later in this statement.

2. *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).

The Supreme Court recently had this to say, in general terms, about the grand jury function:

The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is even to approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it. [*United States v. Dionisio, supra,* 410 U.S. at 17–18, 93 S.Ct. at 773.]

The Supreme Court has said three things, essentially. Courts should not normally interfere with the grand jury in the course of its investigations lest the criminal process grind to a halt.[3] The Court noted an exception to this general guidance, however, by adding the proviso that the grand jury must "not trench upon the legitimate rights of any witness called before it." Lastly, the Court acknowledged its awareness that a grand jury may not necessarily "*always* serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor." (Emphasis added.)

With this as a backdrop, and certainly with no purpose to diminish the traditional grand jury function, I will proceed to a somewhat summary discussion of what was here involved.

A grand jury in this jurisdiction is investigating an attempted robbery. David Toon was served with a grand jury subpoena which ordered him to appear before it and told him to bring an attorney to the

grand jury at 1 p. m. on June 1, 1976. So far as it appears, he has no prior criminal record, was not under arrest and was not charged. Upon arrival he was served with a grand jury directive requiring him to appear in a lineup at the Metropolitan Police Department at 5 p. m. the same day.

Mr. Toon secured counsel who advised him not to appear in the lineup. The government filed a motion for a court-ordered lineup. At the hearing on the motion the government declined to make any representations or otherwise offer support for the lineup order requested. It does appear, however, that the government advised respondent's counsel that Toon was currently a target of the investigation. The trial court has entered a lineup order[4] containing what are sometimes termed sanitizing conditions. To illustrate, the court has ordered that (a) respondent is not to be searched, (b) only "police officers or civilians" are to be included in the lineup, (c) respondent is to be viewed only by witnesses to the offense being investigated, and (d) all photographs, etc. are to be destroyed if respondent is not indicted.

The government contends, principally, that the Supreme Court's decisions in *Dionisio* and *Mara, supra,* authorize this lineup order. As a matter of fact, the government says respondent "is merely being directed to do that which he does repeatedly each day, that is, to present his face to the public, albeit in a situation different from the normal course of daily life."[5]

Respondent contends, on the other hand, that (1) the lineup order goes considerably beyond, and is not controlled by, *Dionisio* and *Mara,* and (2) the lineup order is in

---

3. This court recently had occasion to consider such an interference and did not permit it. *United States v. Moultrie,* D.C.App., 340 A. 2d 828 (1975).

4. The first lineup order entered was found by this court not to conform to the issues with which we had been presented by coun-

sel. We remanded to permit a conformance to the issues presented to us and this was done by means of another court order.

5. A more euphemistic view of a lineup appearance is hardly imaginable. It was not so long ago that it was acknowledged on all sides to be an ordeal.

violation of this court's en banc lineup decision in *Wise v. Murphy*, D.C.App., 275 A.2d 205 (1971).

It was historically inevitable that *Dionisio* and *Mara* would soon be taken to their outermost limits by the government. What this case is all about is whether, in doing so, the government has crossed over the border into constitutionally forbidden territory.[6]

In *Dionisio, supra,* a grand jury directed a witness appearing before it to go to a nearby office of the United States Attorney and give a voice exemplar. The Supreme Court held that the government was not required to make a preliminary showing of reasonableness in order to obtain court enforcement of the grand jury directive. *Mara, supra,* stands for the same proposition, except that it involved a handwriting specimen. These two cases were grounded on the rationale that one's handwriting and voice are repeatedly shown to the public and there should be no expectation of privacy in the tone of one's voice nor in one's script.

This court concludes that in those cases the voice and script were involved and here it is the face which is being exposed, and there is no significant difference. Superficially, this may be true, but the problem goes much deeper than that.

This court held previously that where the prosecutor, acting at the request of the police, seeks a court order requiring an asserted suspect to appear in a lineup the Fourth Amendment requires a showing of reasonableness[7] before the court may issue the order. *Wise v. Murphy, supra·* (en

banc). This court is now holding, without an opinion, that where the prosecutor, acting at a *grand jury* request, seeks a court order requiring an asserted suspect to appear in a lineup the Fourth Amendment *does not* require a showing of reasonableness before the court order may issue.

In other words, the judgment entered by the two-judge panel in this case leaves standing our en banc decision in *Wise v. Murphy*[8] only insofar as the prosecutor is relaying a police request to the court but overrules *Wise v. Murphy* where the prosecutor is relaying a grand jury request.[9] But perhaps it is more accurate to say that a majority of this court, without going through the usual appellate process, has effected this result by declining to consider this issue, bristling though it does with vexing Fourth Amendment problems. In a short period of time, legal justification for requiring a lineup appearance has gone from probable cause to arrest to a showing less than probable cause to arrest (*Wise v. Murphy, supra*) to no showing at all if the government is utilizing the grand jury to direct the lineup appearance. This should have given this court reason to ponder.

In order to demonstrate why I think the full court should have heard this case I will discuss to some degree the merits of the issue.

Preliminarily, I can well understand why the Supreme Court was concerned in *Dionisio* that still another "minitrial" would be added to the criminal justice system if the Circuit Court were there to be affirmed. 410 U.S. at 17, 93 S.Ct. at 764. This case unlike *Dionisio* and *Mara*, does not envisage a "minitrial"[10] nor an adversary hearing,

---

**6.** While a majority of the court obviously does not agree with me, I consider this one of the most interesting personal freedom issues in recent years.

**7.** The required showing is less than probable cause to arrest.

**8.** This court's judgment says our decision in *Wise v. Murphy, supra,* was later in effect

"modified" by the Supreme Court in *Dionisio* and *Mara, supra.*

**9.** A prosecutor might be tempted to take the shortcut, with no judicial restraint, being made available. In fact, as I will note later, the shortcut may already have been taken. (*See* note 12 *infra*).

**10.** This was expressly so stated by respondent at oral argument.

nor testimony. Respondent stated at oral argument that it is seeking an affidavit executed by the Assistant United States Attorney in charge of the grand jury making a few basic representations to the court of relevancy to the grand jury investigation[11] if an individual declines to appear in the lineup at the grand jury's direction. Concededly, there was to be no testimony taken in relation to the affidavit. So, the problem of adding still another "minitrial" to the criminal justice process is not present. Instead, as I understand it, a modest restraint on grand jury authority over the individual in the form of an affidavit by the prosecutor is sought.

Before discussing the merits of the issue, it is well to put it into context. The individual here involved is not an arrestee[12] nor a defendant. Only the uninitiate would not realize it is a common occurrence that entirely innocent individuals are subpoenaed into grand jury rooms who are, initially at least, under some suspicion by the grand jurors. The government says that at the trial court hearing it "refused to divulge the basis for the grand jury's action and stated simply that the grand jury was investigating a statutory crime which occurred in the District of Columbia on a certain date." (Motion for Summary Affirmance, p. 2). Depending upon the scope of the investigation, scores of individuals may initially be under some suspicion in a grand jury investigation. There are varying degrees of suspicion. There may be a substantial suspicion or there may be just a scintilla of suspicion based upon a nebulous rumor, or even on someone's hunch. As I construe this decision, all such individuals may be required to stand in a lineup with no prior showing by the government.

To me, this is something new and not without its disturbing implications in the realm of unchecked grand jury authority. I am not going to explore in any detail what is recognized by us all—that grand juries are guided to a great degree by the prosecutors. Reasonable guidance is of course necessary. But taken to its conclusion, if we have here a problem involving unrestrained grand jury authority then automatically we have also an issue spilling over into the area of unchecked investigative authority.

When all is said and done, the question gets down to just what is entailed in a lineup appearance—looking at it from every direction. If it is merely the inconvenience of a stroll down the street to the police station "to present [one's] face to the public, albeit in a situation different from the normal course of daily life," as the government would have us believe, the question does not present much of a problem. But when it is realized that a lineup appearance goes much deeper there is an issue which should not be breezily brushed aside.

First of all, this court has recognized that a lineup appearance is a "seizure of the person," *Wise v. Murphy, supra* at 212; and that "it is a more severe seizure than the momentary one of *Terry*[13] . . . ." *Id.* It may be an understatement to say

---

11. The precise dimensions of the basic representations sought cannot be set forth here with complete exactitude on this state of the record.

12. This seemingly being a routine case of attempted robbery, one would have expected that investigation such as this lineup appearance would fall into the phase conducted by investigating police officers rather than by a grand jury. It is not evident whether grand juries in this jurisdiction are now engaged generally in routine investigative activity which was previously the job of the investigative police or FBI, as the case may be.

The Seventh Circuit had this to say about that practice:

. . . we hold it to be an abuse of the grand jury process for the Government to impose on that body to perform investigative work that can be, and heretofore has been, successfully accomplished by the regular investigative agencies of Government. [*In Re September 1971 Grand Jury*, 454 F.2d 580, 585 (7th Cir. 1971).]

13. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

that being put on a stage with others in a police station to be viewed, under some potential jeopardy, by those beyond the floodlights, is a humiliating experience. Being compelled by the authorities to go to a police station as a suspect, unless I am dreadfully mistaken, has ordinarily been considered a seizure at a minimum.

In *Wise v. Murphy*, this court acknowledged, as it must, the reality that a lineup appearance carries a risk of possible misidentification and subsequent criminal charges. 275 A.2d at 212. Naturally, this is not to say that lineups are not an extremely useful, if not a necessary, investigative tool. That is assumed. But it is a fact of life that they may entail a risk to a person, no matter how innocent. "A witness who is called to attend a lineup no doubt assumes that a suspect or suspects will be included in the lineup." *Marshall v. United States*, D.C.App., 340 A.2d 805, 808 (1975).

The Supreme Court has stated what sophisticates well know:

> The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. [*United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967).]

Moreover, said the Court:

> . . . it is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before trial. [*Wade, supra* at 229, 87 S.Ct. at 1933, quoting Williams & Hammelmann, *Iden-*

*tification Parades, Part I* [1963] Crim. L.Rev. 479, 482.]

I do not think that any experienced observer would quarrel very much with those generalized comments.

I relate these aspects of a police station lineup to show that a lineup appearance is not simply showing one's face to the public "albeit in a situation different from the normal course of daily life"; and it is not the same as placing one's fingerprints, no two of which are identical, on a card for scientific analysis,[14] or furnishing handwriting specimens as in *Mara, supra*; from the grand jury room to record one's voice as in *Dionisio, supra*.[15] I find it difficult to jump to the conclusion that *Dionisio* and *Mara* modify our lineup decision in *Wise v. Murphy* and control here.

While I agree that the grand jury must not be hampered in its investigations if it is to be effective, I also realize that there should be some judicial supervision where fundamental individual rights are threatened.

A grand jury may not order a police officer to search a person's home without prior judicial approval if an officer may not properly do so without a warrant. Grand jury action does not remove one's basic Fourth Amendment rights. The Supreme Court recognized this in *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974) where it stated:

> The grand jury is . . . without power to invade a legitimate privacy interest protected by the Fourth Amendment.

In *Wise v. Murphy*, this court, "[r]ecognizing the seriousness of the intrusion" of lineups, 275 A.2d at 213, said

---

14. The Supreme Court has indicated that in the Fourth Amendment area fingerprints are not necessarily equatable with lineups. *Davis v. Mississippi*, 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

15. Voice exemplars, additionally, have a certain amount of scientific protection. In this jurisdiction they are not yet admissible in evidence. *United States v. Addison*, 162 U.S. App.D.C. 199, 498 F.2d 741 (1974).

that "a balance of the competing interests must be most careful." *Id.* at 208. The grand jury source of the directive does not remove the seriousness of the intrusion on the person though it is a consideration that may be put on the scales in balancing the "competing interests."

Interestingly, though it frequently delays grand jury investigations, one would seldom have difficulty obtaining a rather thoroughgoing sort of a hearing, extending far beyond what is sought here, on a motion to quash a subpoena duces tecum for being too broad and therefore constitutionally impermissible under the Fourth Amendment. *See e.g., Hale v. Henkel,* 201 U.S. 43, 77, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *See v. City of Seattle,* 387 U.S. 541, 544, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). There it is an unreasonable search and seizure issue involving documents and here it is a personal seizure of the most serious sort with jeopardy attached.

It should be apparent that there is something more here than a stroll to the police station to show one's face to the public. This case has profound problems and should not have been dismissed perfunctorily. I think it should have been considered en banc.

Statement of Associate Judge NEBEKER, concurred in by Associate Judge PAIR, Retired:

The rationale of the differing viewpoints is stated in Judge Gallagher's statement. I add two thoughts not mentioned by him.

The issue is not whether it would be simple for a showing of reasonableness to be made before complying with the grand jury request; rather, it is whether the Fourth Amendment requires such a showing. Surely, if that Amendment does not apply to handwriting and voice samples and the attendant inconvenience of going somewhere under grand jury summons to give

them,[1] it does not apply to full-person identification.[2]

It might also be noted that potential unreliability of evidence obtained is never a factor triggering application of the Fourth Amendment. Indeed, the most reliable of evidence is often excluded under that Amendment. *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The minority seems to conclude the contrary in viewing lineup identification as generally less credible than scientific identification. Of course, voiceprint evidence has yet to receive the general acceptance that lineup and photo identifications have received.

---

1. *United States v. Dionisio,* 410 U.S. 1, 15, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

2. *Id.* at 14, 93 S.Ct. 764 (dictum—"Like a man's facial characteristics . . . .").