**In re James Francis MELVIN.**

**No. 77–1004.**

United States Court of Appeals, First Circuit.

Argued Feb. 3, 1977.

Decided Feb. 9, 1977.

Martin G. Weinberg, Boston, Mass., with whom Judith H. Mizner and Oteri & Weinberg, Boston, Mass., were on brief for appellant.

Robert B. Collings, Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal presents the question whether it is within a grand jury's power to order a person suspected of a crime to participate in a lineup.[1] Appellant is a suspect in the August 19, 1975, armed robbery of the West Yarmouth Branch of the First National Bank of Yarmouth. In connection with the grand jury's investigation, appellant was subpoenaed in March, 1976, and requested by the grand jury to submit to fingerprinting and photographing. After appellant declined to submit voluntarily, the United

---

1. We are told by the United States Attorney that the lineup will be held outside the grand jury's presence and that appellant's attorney will be invited to attend. *See United States v.* *Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *Compare Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

States Attorney obtained from the district court an order directing compliance with the grand jury's request, and appellant complied. Four months later, the United States Attorney sought an order in the district court requiring appellant to participate in a lineup, representing that "it is necessary for the Grand Jury's investigation that he be viewed in a line-up by various witnesses." Although there was no showing either that the grand jury had sought appellant's participation in a lineup or that the Government's request was supported by probable cause to arrest, the district court issued an *ex parte* order directing appellant to participate in a lineup. Appellant sought mandamus in this court to set aside that order, and we granted the requested relief holding that the district court had exceeded its authority because the order "was not shown to have been in aid of an appropriate directive of the grand jury issued to Melvin, and was lacking any other basis of authority". *In re Melvin*, 546 F.2d 1, 5 (1st Cir. 1976).

Following our decision, the grand jury subpoenaed appellant to appear before it. He appeared but declined to indicate whether he would participate in a lineup voluntarily. The grand jury then issued a formal order requiring him to appear in a lineup. On appellant's refusal to comply voluntarily, the United States Attorney sought and the district court issued an order directing him to comply.[2] The lineup was scheduled for a specific time and place, and after appellant failed to appear, the district court found him in contempt. It is from the order of contempt that appellant brings this appeal.

The positions of the parties can be stated briefly. Appellant argues that the grand jury's historic powers have never included a right to order a suspect to appear in a lineup,[3] and that such an order violates the fourth amendment's proscription of unreasonable seizures. Additionally, the order is said to violate Fed.R.Crim.P. 6(d) & (e) limiting who may be present while the grand jury is "deliberating or voting" and requiring grand jury proceedings to be kept secret. The Government's case rests essentially on *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) and *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). In *Dionisio* the Court sustained a grand jury's power to compel a suspect to furnish a voice exemplar, and in *Mara* a similar order of a grand jury directing a suspect to produce handwriting and printing exemplars was upheld. These cases, it is contended, are controlling in the present circumstances and support the grand jury's order.

The Supreme Court's analysis in *Dionisio* seemingly answers, in a manner favorable to the Government's position here, all of the essential claims advanced by appellant except, perhaps, the secrecy argument. In addressing the claimed fourth amendment violation, the Court began by noting that there were two parts to its inquiry.

> "[T]he obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels—the 'seizure' of the 'person' necessary to bring him into contact with government agents, see *Davis v. Mississippi*, 394 U.S. 721, [89 S.Ct. 1394, 22 L.Ed.2d 676], and the subsequent search for and seizure of the evidence."

410 U.S. at 8, 93 S.Ct. at 769, *citing Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). At the first level, the Court held that the inconvenience

---

2. Appellant filed an appeal from this order and again sought relief by way of mandamus. The appeal was dismissed, and the petition for mandamus denied since the district court "was acting within its well established authority to direct compliance with a grand jury's subpoena or similar directive for the gathering of evidence."

3. No state, federal or common law precedent has been called to our attention indicating that a grand jury has traditionally asserted this power; on the other hand, no contrary precedent has been shown. The only current precedent is *In re Toon*, 364 A.2d 1177 (D.C.App. 1976), in which the District of Columbia Court of Appeals recently sustained the grand jury's power to order a suspect to take part in a lineup.

and burdensomeness of being forced to appear before a session of the grand jury or elsewhere for the purpose of providing a voice exemplar does not make a grand jury subpoena a "seizure" within the meaning of the fourth amendment. *Id.* at 8–11, 93 S.Ct. 764; *see Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). At least this is true, the Court said, so long as the grand jury's investigatory powers are not abused so as to transform the body into an "instrument of oppression". 410 U.S. at 12, 93 S.Ct. 764. The Court's rationale in finding that the "seizure" of a "person" necessary to bring him before the grand jury for the purpose of furnishing a voice exemplar does not implicate the fourth amendment seems controlling in the present context. Appearance at a lineup could take longer and be more distasteful, but it is difficult to see that the procedure is so much more burdensome as to be distinguishable for that reason from the ordered identification procedures accepted in *Dionisio* and *Mara.*\*

In reaching the second level of analysis, the Supreme Court went on to hold in *Dionisio* that a claim of unconstitutional "seizure" could not rest on being forced to disclose such physical characteristics as the tone and manner of one's voice. 410 U.S. at 14, 93 S.Ct. at 771. The Court said:

> "Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world."

*Id.; see Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus whatever the differences between a lineup and the production of voice exemplars, it seems clear that one has no more reasonable expectation of privacy in one's face than in one's voice, and that being forced to stand in a lineup does not result in an unconstitutional "seizure".

Appellant argues, however, that there is a crucial difference between a lineup and the identification procedures at issue in *Dionisio* and *Mara* : a lineup is inherently a less reliable identification procedure than the providing of voice and handwriting exemplars. *See* Note, *Detention to Obtain Physical Evidence Without Probable Cause: Proposed Rule 41.1 of the Federal Rules of Criminal Procedure,* 72 Colum.L.Rev. 712, 741–44 (1972); Note, *Proposed Federal Rule of Criminal Procedure 41.1,* 56 Minn.L.Rev. 667, 694 (1972). But as neither the inconvenience of responding to the grand jury's directive nor the forced display of physical characteristics such as one's voice or face make the challenged order a "seizure" within the meaning of the fourth amendment, considerations such as the reliability of the identification procedure are largely irrelevant to whether the grand jury directive to appear violates the fourth amendment. It is simply immaterial to the constitutional analysis whether a lineup is less "scientific" than fingerprinting, voice and handwriting comparison, or other identification procedures. As the Court recognized in *Dionisio,* a grand jury's investigatory powers include the right to "act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge." 410 U.S. at 15, 93 S.Ct. at 772. And a lineup is a well-accepted investigatory method, far preferable to individual confrontations. Indeed, it is by now well established that, whenever possible, witnesses should view suspects in lineups rather than individually to avoid the misidentification that can result from a lone confrontation. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). To deny the grand jury the power to require a suspect's participation in a lineup is therefore to place the Government in a dilemma: if it is to let the witness view the suspect at all, it must do so under circumstances which courts have repeatedly criticized as unduly suggestive. A lineup

---

\* While he does not dissent, Judge Aldrich wishes it noted that he does not find the result herein to follow as readily as the court may seem to conclude, as he believes a greater personal intrusion is involved in forcing one to appear in a lineup as opposed to testifying or giving voice or handwriting exemplars.

does not pose the same potential for unfairness, particularly where the suspect's counsel is present, *see United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We note that the Government wisely intends to allow appellant's counsel to be present, and hence we are not confronted with whether it is required to do so by the sixth amendment. *Compare id. with Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). We expressly refrain from deciding that forcing a suspect to appear in a lineup without tendering the right to counsel would be constitutional.

The power to compel appearance at a lineup is, it is true, subject to possible oppressive misuse. A fingerprint or handwriting or voice exemplar need only be obtained once. There is no occasion, as with a lineup, to require the witness to return and give his evidence in other investigations. *See Davis v. Mississippi,* 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). One can imagine the temptation to call certain individuals with known criminal proclivities to appear repeatedly in lineups, and the absence of a standard of probable cause or reasonable suspicion adds to the potential for abuse. *Cf. In re Melvin, supra,* 546 F.2d at 2–3. But many investigatory powers of the grand jury are subject to abuse, and the remedy for this problem, if it should occur, is pointed out in *Dionisio,* where the Court states:

> "[T]he Constitution could not tolerate the transformation of the grand jury into an instrument of oppression[.] . . . 'Grand juries are subject to judicial control and subpoenas to motions to quash.'"

410 U.S. at 12, 93 S.Ct. at 770, *quoting Branzburg v. Hayes, supra,* 408 U.S. at 708, 92 S.Ct. 2646. The oppressive use of orders to appear in lineups can and should be dealt with by refusal of a court to enforce the order. Here there is no suggestion of oppressive use and no need to interfere with the grand jury's power to issue the order. We conclude, therefore, that subject to the district court's continuing power and duty to prevent misuse, the grand jury is empowered to require a suspect to appear at a lineup.

Finally, we see no violation of the Federal Rules of Criminal Procedure in the lineup procedure. The lineup is not one of the "matters occurring before the grand jury" subject to the nondisclosure guidelines of Rule 6(e), nor is Rule 6(d), limiting the persons who can be present "while the grand jury is deliberating or voting", involved here. The lineup is a separate investigative procedure, attendance at which the grand jury may require; it does not itself become physically incorporated in the grand jury's own proceedings.

We conclude under *Dionisio* and *Mara* that the district court did not err in enforcing the order of the grand jury directing appellant to appear at the lineup, and we affirm its judgment holding him in contempt.

*Affirmed.*