UNITED STATES of America, Appellee,

v.

Bruce Thomas THOMANN,
Defendant-Appellant.

No. 79–1075.

United States Court of Appeals,
First Circuit.

Argued Sept. 6, 1979.

Decided Nov. 14, 1979.

Cornelius H. Kane, Jr., Boston, Mass., by appointment of the Court, for defendant-appellant.

Robert T. Kennedy, Asst. U. S. Atty., Concord, N. H., with whom William H. Shaheen, U. S. Atty., Concord, N. H., was on brief, for appellee.

Before KUNZIG, Judge, U.S. Court of Claims,* CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant was convicted after a jury trial of bank burglary and theft under 18 U.S.C. §§ 2113(a) and (b). On this appeal, he raises the following issues, which we discuss seriatim:

1. whether the district court erred in ordering defendant's wife to submit to fingerprinting and in denying his motion for a new trial;

2. whether the district court erred in not ordering severance of the codefendants;

3. whether the district court erred in its charge to the jury; and

4. whether the defendant was deprived of his sixth amendment right to effective assistance of counsel.

In the early morning hours of September 5, 1977, Labor Day, a burglary occurred at the Seabrook, New Hampshire, branch of the Hampton National Bank and approximately $6,500 was removed from the safe. An elaborate bypass of the bank's alarm

* Sitting by designation.

system and the cutting of a hole in the roof of the building afforded the burglars entrance into the bank. One safe was then pried open, but access to the night depository vault was thwarted due to failure of a sophisticated process involving explosives and water.

In early 1978, Richard Lewis entered a guilty plea in the District Court of New Hampshire for his participation in the burglary and theft. He was sentenced to two years incarceration, after such a recommendation by the government, in exchange for the plea and Lewis' agreement to testify against his coparticipants, Eugene LaRue and appellant, Bruce Thomann.

Lewis was the chief witness for the government in the five day trial of LaRue and appellant. His testimony detailed the planning and execution of the bank burglary by the three men. The jury found both defendants guilty on both counts of the indictment and appellant was subsequently sentenced to two concurrent ten year terms of imprisonment.

## I. *The Fingerprint Evidence*

Appellant argues that his constitutional rights were violated by the admission into evidence of his wife's fingerprint. We hold that appellant lacks "standing" to raise this issue.

Some background facts are necessary. Lewis testified that the three robbers had come to New Hampshire on the weekends of August 20 and 26 to plan the bank robbery. They stayed at Pawtuckaway State Park in Raymond on each weekend and gave false names, addresses, and automobile registrations on the camping permits they were required to fill out. Lewis also testified that on the weekend of August 26, appellant's wife, Patricia Thomann, accompanied appellant to New Hampshire. She gave the name of Patricia Avery on the camping permit and a Georgia automobile registration number that differed only slightly from her actual Georgia registration.

During the course of its investigation, the government discovered a latent fingerprint on the August 26 camping permit in the name of Patricia Avery. Since the government knew that appellant was married to a Patricia Thomann and that she owned an automobile registered in Georgia, it had good reason to believe that the fingerprint was that of appellant's wife. If it were, this would be strong corroboration of Lewis' statement that appellant and his wife had been in New Hampshire on August 26 to help plan the bank robbery. The government, therefore, subpoenaed appellant's wife prior to trial in order to obtain her fingerprints and match them against the one on the permit. Mrs. Thomann refused to comply with the subpoena and a court order was obtained. One of the fingerprints taken matched the one on the camping permit and was introduced at trial to corroborate the testimony of Lewis.

■ Fingerprint evidence does not fall within the fifth amendment's privilege against self-incrimination. Compelling a criminal suspect to exhibit his identifying physical characteristics, such as a blood sample or fingerprints, is not the forced extraction of testimonial or communicative evidence contemplated by the fifth amendment. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1965); *Appeal of Maguire*, 571 F.2d 675 (1st Cir. 1978), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411.

■ While identification evidence does not come within the protection of the fifth amendment, the detention by the government of a person for the purpose of fingerprinting is a "search" within the meaning of the fourth amendment and is subject to its constraints of reasonableness. *Schmerber v. California, supra; Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1968).

In *Davis*, the Supreme Court held that the "dragnet" fingerprinting of Black youths was constitutionally impermissible. The question expressly left open in *Davis* was "whether the requirements of the

Fourth Amendment could be met by narrowly circumscribed procedures for obtaining, during the course of a criminal investigation, the fingerprints of individuals for whom there is no probable cause to arrest." *Davis v. Mississippi, supra,* 394 U.S. at 728, 89 S.Ct. at 1398. *See In Re Melvin,* 550 F.2d 674 (1st Cir. 1977).

While it might appear that this heretofore open question is the issue in this case, we need not address it until we have disposed of whether or not appellant has "standing" to raise it.

 In order to base a challenge to illegally seized evidence on the fourth amendment, a petitioner must show that he or she has a protectable interest in the items seized or property searched, or that he or she was the subject of an unlawful search or seizure. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

> In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.

*Id.* at 261, 80 S.Ct. at 731. Appellant urges us to allow him to challenge the search as "one against whom the search was directed." He contends that, since the government was seeking evidence to be used against him at his trial, he is entitled to standing. This "target theory" was expressly rejected by the Supreme Court in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Petitioners, there, sought to exclude evidence seized from a car in which they were passengers and which they did not own on the basis that, since they were the ones against whom the search was directed, they had standing to invoke the fourth amendment. The Court rebuffed this attempt to broaden the *Jones* test for standing by reaffirming the scope of the amendment's protection as articulated in *Katz v. United States,* 389 U.S. 347, 88

S.Ct. 507, 19 L.Ed.2d 576 (1967). It is not enough, the Court said, that petitioners might have been legitimately on the premises at the time of the search; rather, since fourth amendment rights are personal, petitioners must prove that they have a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois, supra,* 439 U.S. at 143, 99 S.Ct. at 430. *See also Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Dall,* No. 79–1198, 608 F.2d 910 (1st Cir. 1979); *United States v. Salvucci,* 599 F.2d 1094 at 1097 (1st Cir. 1979), *petition for cert. filed,* 48 U.S.L.W. 3178 (U.S. August 14, 1979) (No. 79–244); *United States v. Dyar,* 574 F.2d 1385, 1390 (5th Cir. 1978).

The language in *Jones v. United States, supra,* 362 U.S. at 261, 80 S.Ct. at 731, "one against whom the search was directed," which appellant contends extends the fourth amendment's protection to encompass anyone who may be the target of a search, was said by the Court in *Rakas* to be merely an appositive, restating the immediately preceding phrase and not meant to be interpreted as an extension of the rights protected by the fourth amendment. *Rakas v. Illinois, supra,* 439 U.S. at 135, 99 S.Ct. 421. The Court grappled with the concept of standing.

> We can think of no decided cases of this Court that would have come out differently had we concluded, as we do now, that the type of standing requirement discussed in *Jones* and reaffirmed today is more properly subsumed under substantive Fourth Amendment doctrine. Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of "standing," will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing. The Court in *Jones* also may have been aware

that there was a certain artificiality in analyzing this question in terms of standing because in at least three separate places in its opinion the Court placed that term within quotation marks.

362 U.S., at 261, 263, 265 [, 80 S.Ct. 725, at 731, 732, 733].

*Id.* at 139, 99 S.Ct. at 428.

■ Thus, in order for appellant here to have "standing," it is not enough merely for him to assert that his rights were prejudiced by the evidence or even that the evidence was sought in order to convict him. Appellant must allege and prove that he was the one whose actual privacy was invaded by the search. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The Court put it succinctly in *United States v. Hunt*, 505 F.2d 931, 939 (5th Cir. 1974), *cert. denied*, 421 U.S. 1023, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), "[T]he Fourth Amendment protects the 'I' but not the 'thou.'"

Appellant does not claim to have had his own legitimate expectation of privacy implicated in the "search" for his wife's fingerprints. Identification evidence such as blood samples, fingerprints, voice and handwriting exemplars, are clearly personal; they belong to the person of the one from whom they are sought.

■ Appellant does not claim, and could not claim, the protection of spousal privilege. Any husband-wife privilege otherwise available to him would only comprehend testimonial or communicative evidence taken from his wife in an effort to convict him. *See* Fed.R.Evid. 501; *United States v. Bolzer*, 556 F.2d 948, 951 (9th Cir. 1977). Since the taking of Mrs. Thomann's fingerprints was not the compulsion of testimonial evidence in violation of the marital privilege and since appellant has no other legitimate privacy interest in the fingerprints of his wife, their admission into evidence did not violate any of his constitutional rights.

The threshold question of whether the challenged search violated the rights of the appellant having been answered in the negative, we need not consider the lawfulness of the search itself. Mrs. Thomann is not a defendant in any criminal case and does not have the opportunity to raise the issue of an alleged infringement of her fourth amendment rights. *See Alderman v. United States*, 394 U.S 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

II. *Severance*

■ Appellant argues that it was error for the district court not to order severance of the defendants at trial. While he concedes that joinder of the defendants for trial was proper under Fed.R.Crim.P. 8(b) in the first instance,[1] he claims that the disparity between the evidence against him and his codefendant prejudiced him, and that the trial court should have ordered severance under Fed.R.Crim.P. 14.[2] Since defense counsel failed to move for severance at trial, we look to see if the court's failure to sever sua sponte was plain error. Fed.R.Crim.P. 52(b). We find no error of any dimension.

■ Where criminal defendants are properly joined under Fed.R.Crim.P. 8(b), a "strong showing of prejudice" must be made by appellant, and since a motion for severance is addressed to the trial court in its discretion, a denial is reviewed only for abuse of discretion. *United States v. Cleveland*, 590 F.2d 24, 28 (1st Cir. 1978); *United States v. Luna*, 585 F.2d 1, 4–5 (1st Cir. 1978); *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir. 1977), *cert. denied*, 434 U.S. 866, 966, 971, 98 S.Ct. 203, 508, 523, 54 L.Ed.2d 143, 453, 461.

---

1. "Joinder of defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

2. "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

█ This was not a complicated conspiracy case with a large number of counts and defendants causing the jury difficulty in differentiating between charges and defendants. *See United States v. Luna, supra,* 585 F.2d 1; *United States v. Smolar, supra,* 557 F.2d at 21; *Gorin v. United States,* 313 F.2d 641, 646 (1st Cir. 1963). This case consisted of two related counts that constituted a single "transaction"—the burglary of the Hampton National Bank. The two codefendants committed their criminal acts contemporaneously. While the government acknowledges it had "quite substantial" evidence against codefendant LaRue, the record reveals sufficient independent evidence against appellant for the jury to believe he was a key participant in the burglary without confusing his acts with those of his codefendant. Not only did the trial judge in his instruction to the jury make reference to each individual defendant qua individual no fewer than five times, the jury itself made clear during its deliberations that it was able to focus on each defendant separately. The two questions that the jury forwarded to the judge during deliberation referred to the defense of appellant alone.[3]

"Speculation is not a ground for severance." *United States v. Abrahams,* 466 F.Supp. 552, 556 (D.Mass.1978). Appellant not having met his burden of a strong showing of prejudice because of joinder of the defendants, we hold that it was not error for the district court not to order severance.

## III. *The Charge*

Appellant claims the following language in the court's charge to the jury was erroneous: "If either or both of the defendants be proven guilty, say so. If either or both of the defendants be proven not guilty, say so." Since appellant pulls these two lines out of context, we reproduce the portion of the charge that immediately followed them:

> Keep constantly in mind that it would be a violation of your sworn duty to base a verdict of guilty upon anything other than the evidence in these cases. And remember again that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. Remember also that the question before you can never be will the government win or lose the case. The government always wins when justice is done, regardless of whether the verdict be guilty or not guilty.

█ Appellant's failure to object at the time the charge was given, results in the "plain error" standard of review.[4] *United States v. Miller,* 589 F.2d 1117, 1137 (1st Cir. 1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771. When the charge is viewed in its entirety, the challenged portion cannot be said to be a defect that affected "substantial rights" of appellant. Fed.R.Crim.P. 52(b). It is well-settled that "a single instruction to a jury [must] not be viewed in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The Supreme Court has framed the inquiry to be made in this area:

> [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Id.* at 147, 94 S.Ct. at 400.

This is not a case where the jury received no instruction whatsoever on the defend-

---

**3.** The jury requested a map of New York State, probably in an attempt to weigh appellant's alibi defense of having been both at Oneida Lake, New York, and Ogdensburg, New York, on the weekend of the burglary. In addition, the jury asked if there had been testimony that appellant's appearance had changed in any way since the date of the burglary.

**4.** Fed.R.Crim.P. 30 provides in pertinent part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

ant's presumption of innocence. *See, e. g., Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). Indeed reference was made to the presumption of innocence and the constant burden of proof on the government no fewer than eight times in the charge. These references were not made in a perfunctory manner and, when taken in context, the offending statement cannot be viewed as prejudicial to appellant. It is highly improbable that the jury would have been so impressed by that one passage in the charge as to have ignored the multiple warnings against presuming appellant had to prove that he was not guilty.

In a recent case in this circuit where we found reversible error in the judge's charge, the offending instruction came at the beginning of the charge, in close proximity to an almost identical statement by the judge during the prosecutor's closing argument. *United States v. Harrigan,* 586 F.2d 860 (1st Cir. 1978). Additionally, the nature of the evidence in that case—intercepted telephone conversations and a voice exemplar—made it "far from an open and shut case." *Id.* at 863. Nor is this a case of "skeletal" or "Spartan instructions" to the jury. *See, e. g., Taylor v. Kentucky,* 436 U.S. at 486, 98 S.Ct. 1930. The jury instructions in this case comprise over fifteen pages of the trial transcript; the one offending line must be judged against this backdrop.

In the light of all the circumstances in this case, including the overall fairness and thoroughness of the judge's charge, we find that, if error there was, it was harmless and not grounds for reversal. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

IV. *The Sixth Amendment Claim*

■ The claim that appellant was deprived of the effective assistance of counsel is grasping at straws. We have no difficul-

ty finding that, under our recently articulated "reasonably competent assistance" standard, *United States v. Bosch,* 584 F.2d 1113 (1st Cir. 1978), appellant received representation well " 'within the range of competence expected of attorneys in criminal cases'." *Id.* at 1121. In *Bosch,* we discussed the history of the sixth amendment guarantee that the accused shall have the assistance of counsel for his defense and the evolution from the "farce and mockery" test to the effective assistance standard. *Id.* at 1120–21. This does not, however, open the door to Monday morning quarterbacking of trial tactics, nor does it mean that counsel must bring futile or frivolous motions to protect him or herself. *Bosch* at 1121.

■ Appellant in his brief focused on three matters as showing lack of competent assistance of counsel: failure of counsel to subpoena a witness as requested by appellant, failure of counsel to renew a motion for severance that had been denied by the magistrate, and failure of counsel to object to a portion of the charge.

At oral argument, counsel for appellant agreed that the government's motion to strike appellant's affidavit relative to the failure to subpoena the requested witness should be granted and this matter is, therefore, not an issue.[5]

We have discussed the severance matter at length and only add that a pretrial motion for severance would have been futile.

While superficially, there were grounds for an objection to that portion of the charge that contained the unfortunate words, "[i]f either or both of the defendants be proven not guilty, say so," the failure to object does not of itself show that counsel's assistance was constitutionally ineffective. Our examination of the record convinces us that appellant's trial counsel defended him with reasonable competence. The key to the case was the testimony of the accomplice, which was clear and compelling.

---

5. The affidavit clearly was an attempt to supplement the record and, therefore, did not meet the requirements of Fed.R.App.P. 10(a).

Both defense counsel vigorously attacked the accomplice's credibility. The fact that this attack failed is not a reflection on the ability of defense counsel, but rather a testament to the care and preparation that went into the government's case.

*Affirmed.*