**In re GRAND JURY PROCEEDINGS
(Cecil MILLS).**

**Misc. No. 81–36.**

United States District Court,
D. Delaware.

Sept. 11, 1981.

Joseph J. Farnan, Jr., U. S. Atty. and Edmund D. Lyons, Jr., Asst. U. S. Atty., Wilmington, Del., for the United States of America.

David B. Stratton, of Richards, Layton & Finger, Wilmington, Del., for Cecil Mills.

OPINION

STEEL, Senior District Judge:

The Federal Grand Jury of the United States District Court of Delaware is investigating the armed robbery of a local bank branch. One of the participants in this robbery was disguised by a ski mask which completely covered his face and hair making identification difficult, although there are eyewitness descriptions of the height and weight of the robber. Cecil Mills is suspected of being this disguised participant.

On August 14, 1981 he was summoned before the Federal Grand Jury and was asked to permit the taking of hair samples in order to determine whether his hair

matched what appear to be human hairs from a head or beard found in a ski mask recovered from the scene of the robbery shortly after the crime was completed. Mills was further requested to permit accurate height and weight measurements to be taken. He refused both requests.

Thereupon, the United States filed a petition in the Court seeking an Order mandating that Mills agree to the Grand Jury's demands. This petition was supported by the affidavit of Assistant United States Attorney Edmund D. Lyons, Jr. In response to the Government's petition, the Court entered an Order requiring Mills to permit the taking of hair samples and the measurement of his height and weight by a doctor or other trained medical personnel under the supervision of an agent of the Grand Jury.

Counsel was appointed to represent Mills after the Order was issued. Through counsel, Mills informed the Government that he would agree neither to the taking of hair samples nor physical measurements unless the Government obtained a search warrant authorizing their production. Thereafter, Mills filed a motion to vacate or modify the aforementioned order of this Court.

It is settled that the Fourth Amendment offers no protection for physical qualities which are normally exposed to public view. The reasonable expectation of privacy which usually summons the protection of the Amendment against unreasonable searches and seizures cannot be reasonably said to exist in the case of manifest physical characteristics. See *United States v. Dionisio*, 410 U.S. 1, 14, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973). For this reason, the courts have held that Fourth Amendment coverage does not extend to Grand Jury compelled voice exemplars, *United States v. Dionisio, supra*, handwriting exemplars, *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), and lineup appearances, *In re Melvin*, 550 F.2d 674 (1st Cir. 1977).

A comparison of the weight and height measurements in the instant case with the involuntary lineup appearance ordered by a Grand Jury in *In re Melvin, supra*, is especially apposite. In *Melvin* the Court sustained a Grand Jury's power to compel a lineup appearance on the grounds that a person has no reasonable expectation of privacy in his facial characteristics. This reasoning applies as forcefully to Mills' expectation of privacy concerning his height and weight. Furthermore, the simple procedure of recording Mills' height and weight is surely a less inconvenient and humiliating intrusion than a compelled lineup.

The issue of whether a Grand Jury may compel a person to submit to the taking of hair samples is more problematical. Support for the warrantless clipping of the hair of a person, incident to a lawful arrest, without his permission may be found in the cases. One court held that the taking of hair samples from a person while he is in custody represented a minor intrusion which even in the absence of a search warrant could be considered reasonable. *United States v. D'Amico*, 408 F.2d 331 (2d Cir. 1969). However, there the accused was already in custody incident to a lawful arrest when the samples were taken, a situation markedly different than in the instant case. In fact, one state court went to some pains to note that the existence of strong probable cause influenced its decision that the warrantless seizure of hair samples without the permission of the accused was constitutionally proper. *Commonwealth v. Tarver*, 369 Mass. 302, 345 N.E.2d 671 (1975).

In the present case, the proposed search of Mills is not to be made incident to a lawful arrest and, in addition, there is no suggestion that probable cause exists. Indeed, although the Government asserts both that a mask containing what "appears to be human hair" was found and that Mills is suspected of participation in the crime, it in no way logically connects these two facts. Further, it offers no information at all as to why Mills is suspected of complicity in the bank robbery except that he may be of approximately the same height and weight of the masked robber seen by eyewitnesses.

The Government does not rely heavily on the above mentioned cases, although it does cite them, but rather it has chosen to place the weight of its argument on what may be styled the *Dionisio-Mara* line of cases. As noted earlier, the United States Supreme Court in *Dionisio, supra,* permitted a Grand Jury to compel a criminal suspect to produce a voice exemplar, while in *Mara, supra,* a Grand Jury order similarly compelling a handwriting exemplar was also permitted.

■ Careful analysis of these cases indicates that a comparison of the Grand Jury demands made in them with the instant demand for hair samples is faulty. In the leading case, *Dionisio,* the Court held that a forced disclosure of such physical qualities as the sound of a person's voice did not fall under the protection of the Fourth Amendment. The Government in the instant case argues that hair samples should be included in this unprotected category of physical characteristics. Because the courts have seemingly grown more permissive regarding warrantless "seizures" of physical characteristics in recent years it is arguable that the leap from the compelled taking of voice samples to the seizure of hair samples is not a long one. However, a more persuasive argument holds that hair, when removed from the face and scalp and subjected to scientific analysis, is less analogous to manifest "physical characteristics" and more comparable to blood samples, for which *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) demands a warrant absent pressing circumstances. Because an appreciably greater personal intrusion is involved in forcing a man to have hair removed than in recording samples of his voice the Government's equation of voice exemplars with head and facial hair is unwarranted, and its reliance on *Dionisio* falls short of convincing application in the instant case.

In addition to the above considerations, two other factors influence the conclusion that a forced taking of hair samples should not be permitted in this case. One, there exist no exigent circumstances which makes time of the essence here. Mills' hair cannot be destroyed nor will it likely evanesce (as in alcohol in Schmerber's blood would have). Also, he is currently incarcerated at the Delaware Correctional Center for conviction of another offense, so he will be readily located when he is needed. Therefore, the Government is afforded ample time in which to obtain a search warrant.

Two, the Government argues that *United States v. Allen,* 337 F.Supp. 1041 (E.D.Pa. 1972), a case which strongly supports Mills' position, retains no vitality after *Dionisio* was decided. However, the Court in *Allen* held that "blood, hair, and other *body components* are objects to be seized only through the warrant process ..." *Id.* at 1043 (emphasis added). The voice exemplars which the *Dionisio* Court permitted to be seized upon a Grand Jury's demand without a warrant cannot reasonably be considered "body components."

For the preceding reasons, Mills' motion to vacate the Order will be granted insofar as it relates to the taking of samples of his head and facial hair, but it will be denied as it pertains to the accurate measurement of his height and weight.