**AURIEL DEVON FRETT, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2015-0082

Supreme Court of the Virgin Islands

February 22, 2017

402

404

NANCY E. LUCIANNA, ESQ., Law Offices of Nancy E. Lucianna, P.C., Fort Lee, N.J., *Attorney for Appellant.*

SU-LAYNE U. WALKER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 22, 2017)

SWAN, *Associate Justice.* Appellant, Auriel Devon Frett ("Frett"), appeals the judgment and commitment entered by the Superior Court on

405

October 14, 2015, which adjudged him guilty of first-degree murder, first-degree assault and kidnapping for robbery, and sentenced him to life imprisonment without parole. For the reasons elucidated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

We previously expounded the salient facts of this case in our prior reported opinion, *Frett v. People*, 58 V.I. 492 (V.I. 2013), in which this Court reversed Frett's convictions stemming from the robbery and murder of Gabriel Lerner ("Lerner").

Frett's retrial commenced on June 8, 2015. Prior to jury selection, Frett objected to the testimony of the People's first fact witness, retired Judge Brenda J. Hollar, arguing that the prejudicial effect of her testimony outweighed its probative value. The trial court permitted Judge Hollar to testify and instructed the jurors that they were not to give such testimony greater weight due to the witness's former position as a judge. The jury also heard the testimony of John Southwell ("Southwell"), who had previously been charged with first-degree murder, together with Frett. Southwell, however, consummated a plea agreement with the People, pursuant to which he pleaded guilty to second-degree murder and first-degree assault with the predicate offense of robbery, and agreed to testify against Frett. On both direct and cross-examination, Southwell testified to the plea agreement and its terms, which included a twenty-year incarceration sentence on the murder charge and a ten-year incarceration sentence on the robbery offense. By Frett's motion, the plea agreement was also admitted into evidence.

Southwell testified that on the morning of October 26, 2008, Lerner stopped to offer a ride to him and Frett. Frett — while seated directly behind Lerner and holding a black .380 caliber handgun — asked Lerner if he had ever been robbed before. Lerner surrendered his wallet to Frett, who then directed Lerner to the back seat of his vehicle. Frett then drove the vehicle to a local grocery store in Estate Dorothea, where he and Southwell used Lerner's credit card to purchase items. At trial, the jury viewed video surveillance footage showing Frett and Southwell at the store. Next, Southwell testified that Frett drove the vehicle to Estate Hull Bay, where Southwell opened the trunk and Frett forced Lerner inside. Southwell recounted that Frett then drove to Estate Bordeaux, where he stopped at a dirt road. Southwell and Frett removed Lerner from the trunk, after which they walked along a trail. Frett then ordered Lerner to turn around, before shooting Lerner in the back of his head.

406

After the People's presentment of evidence, Frett unsuccessfully moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Frett presented no witnesses in his defense. During Frett's closing summation, counsel urged the jury to consider Southwell's testimony with caution, as Southwell had entered into a plea agreement with the People and therefore had an "incentive," presumably to falsely implicate Frett in the murder. (JA at 604.) Frett's counsel then argued to the jury that Southwell opted to enter into the plea agreement to avoid spending the remainder of his life in jail. At that point, the trial court interjected, *sua sponte*. The court instructed the jury that any "term of incarceration" was "within the sole province of the court," and directed the jury to refrain from considering such term when evaluating the evidence. (JA at 604-05.)

Upon recommencing his closing argument, Frett's counsel told the jury that Southwell had "cut a deal" with the People in exchange for his testimony in Frett's trial. (JA at 605.) During the People's rebuttal argument, the prosecutor urged the jury to consider whether Southwell's twenty-year sentence on the murder charge was "such a great deal." (JA at 612-13.) The prosecutor also argued that Frett was guilty and stated that neither an inference nor a presumption of innocence existed. The People also claimed that Southwell had accepted responsibility for his role in the murder and posited to the jury that Southwell had testified truthfully.

In its final instructions to the jury, the court directed the panel to consider Southwell's testimony with great care and caution, given the admitted evidence regarding his plea agreement with the People. The court also instructed, "[i]f the accused be proven guilty, say so. If proven not guilty, say so." (JA at 650-51.) Ultimately, Frett was adjudged guilty of all three counts with which he was charged, and by the judgment and commitment order entered on October 14, 2015, he was sentenced to life incarceration without the possibility of parole for the charge of first degree murder.[1] Frett timely filed a notice of appeal on November 3, 2015. *See* V.I.S.CT.R. 5(b)(1).

---

[1] Frett was also sentenced to a period of incarceration of 45 years for his kidnapping for robbery conviction, to run consecutive to his first-degree murder charge, and 15 years for his first degree assault-robbery conviction, which is to be suspended upon completion of the sentences for the other two charges.

## II. JURISDICTION AND STANDARD OF REVIEW

■ We exercise jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides, "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." It is well-established that in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of this statute. *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (collecting cases). The Superior Court's October 14, 2015, judgment and commitment constitutes a final order, thereby vesting this Court with jurisdiction. *Id.*

■ Our review of the trial court's application of law is plenary, while findings of fact are reviewed for clear error. *Tyson v. People*, 59 V.I. 391, 400 (V.I. 2013). Issues raised by an appellant for the first time on appeal are reviewed for plain error. *Id.* In applying this standard, "this Court must find (1) an error, (2) that is plain, and (3) that it affected substantial rights." *Freeman v. People*, 61 V.I. 537, 544 (V.I. 2014) (citing *Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012)). If we determine the error meets these requirements, this Court may grant relief if we deem the error one which seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Id.* (citing *Flavius*, 57 V.I. at 721).

■ "When reviewing a challenge to the sufficiency of the evidence leading to a conviction, the standard of review is whether there is substantial evidence, when viewed in the light most favorable to the government, to support the jury's verdict." *Gumbs v. People*, 64 V.I. 491, 499 (V.I. 2016) (citing *McIntosh v. People*, 57 V.I. 669, 678 (V.I. 2012)); *see Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012). We exercise plenary review over a trial court's denial of a motion for judgment of acquittal. *Gumbs*, 64 V.I. at 499 (citations omitted).

## III. DISCUSSION

### A. Frett's due process rights were not violated by the prosecutor's misstatement of the law on the presumption of innocence.

■ Frett claims that the People, during its closing argument, misstated the law by making repeated comments implying that the presumption of innocence had been eliminated prior to jury deliberations, thereby violating

his due process rights. Specifically, Frett challenges two statements made by the prosecutor in her rebuttal closing summation. First, the prosecutor told the jury, "it is not that this defendant is innocent. That is not it. He's guilty. Guilty on each of those counts. There's no inference of innocence here today. None whatsoever." (JA at 611-12.) Shortly thereafter, the prosecutor stated: "things turned really bad as a result of [Frett]. As a direct result of Frett. There's no presumption here whatsoever of innocence." (JA at 612.) Given that Frett failed to object to either of these statements before the Superior Court, we review them only for plain error. *John v. People*, 63 V.I. 629, 639 (V.I. 2015) ("[I]ssue[s] . . . not fairly presented to the trial court for consideration . . . will be reviewed only for plain error." (citing *Freeman*, 61 V.I. at 544)).

■ Under the Fifth Amendment of the United States Constitution, applicable in the Virgin Islands pursuant to section 3 of the Revised Organic Act, a criminal defendant is "guarantee[d] due process in all court proceedings." *Rivera v. People*, 64 V.I. 540, 571 (V.I. 2016) (citing *Simmonds v. People*, 59 V.I. 480, 491 (V.I. 2013)). "A claim of prosecutorial misconduct during trial requires a court to resolve two questions: whether the prosecutor's comments were in fact improper and, if so, whether the remarks prejudiced the defendant's right to a fair trial." *Monelle v. People*, 63 V.I. 757, 770 (V.I. 2015). If the subject remarks do constitute misconduct, "we proceed to determine whether that misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process,' taking into account 'the entire proceeding.' " *Gov't of the V.I. v. Mills*, 821 F.3d 448, 456, 64 V.I. 699 (3d Cir. 2016) (citations omitted); *Estick v. People*, 62 V.I. 604, 617 (V.I. 2015). In our inquiry, this Court examines "the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction." *Monelle*, 63 V.I. at 770. Reversal is warranted unless the error is harmless. *Connor v. People*, 59 V.I. 286, 299 (V.I. 2013). If the error is constitutional, "we will affirm [only] if we find that the error is harmless beyond a reasonable doubt." *Id.* (alterations in original). Conversely, "if the error is non-constitutional, we will affirm when it is highly probable that the error did not contribute to the judgment." *Id.*

■ Indeed, "[p]rior to conviction, the accused is shielded by the presumption of innocence, the 'bedrock[,] axiomatic and elementary

principle whose enforcement lies at the foundation of the administration of our criminal law.' " *Betterman v. Montana*, 136 S. Ct. 1609, 1614, 194 L. Ed. 2d 723 (2016) (quoting *Reed v. Ross*, 468 U.S. 1, 4, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984)). Our society's belief that all are innocent until the state has proved them guilty is implicit in the concept of ordered liberty, *United States v. Salerno*, 481 U.S. 739, 763, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987), and this presumption of innocence "is a basic component of a fair trial under our system of criminal justice." *Delo v. Lashley*, 507 U.S. 272, 278, 113 S. Ct. 1222, 122 L. Ed. 2d 620 (1993). Accordingly, a defendant retains a presumption of innocence throughout the trial process, until a jury returns a guilty verdict. *Martinez v. Ct. of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162, 120 S. Ct. 684, 145 L. Ed. 2d 597 (2000).

■ At the outset, therefore, the prosecutor's comments that "[t]here's no inference of innocence here today," and "[t]here's no presumption here whatsoever of innocence," are both patently incongruous with the fundamental legal principle that Frett was presumptively innocent throughout the entire trial, until the time of conviction. *Portuondo v. Agard*, 529 U.S. 61, 76, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000) (Stevens, J., concurring in judgment) ("[T]he presumption of innocence . . . survives until a guilty verdict is returned."); *Watts v. State*, 2016 WY 40, 370 P.3d 104, 108 (Wyo. 2016) ("[T]he presumption of innocence remains with the accused until the jury concludes that a conviction is warranted beyond a reasonable doubt."); *State v. Peterson*, 673 N.W.2d 482, 486 (Minn. 2004) ("One accused of crime has the right to have the jury take [the presumption of innocence] to the jury room with them as the voice of the law."); *State v. Boots*, 315 Ore. 572, 848 P.2d 76, 89 (Or. 1993) ("[D]oubt is only removed when a jury returns a verdict of guilty, for the presumption of innocence is a disputable question which goes with the jury into the jury room for consideration.").

■ Nevertheless, the fact that the prosecutor's closing remarks were incorrect or improper is not dispositive of this issue because it does not provide *per se* grounds for a new trial. *Estick*, 62 V.I. at 617. As Frett accurately recognizes, the crucial question is whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding." *Id.; Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) ("[A] prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting

410

conviction a denial of due process." (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986)) (quotation marks omitted)); *Marshall v. Hendricks*, 307 F.3d 36, 67 (3d Cir. 2002) ("[I]mproper conduct is not, in itself, sufficient to constitute constitutional error, even when — as here — that conduct is alleged to be both deliberate and pervasive. Improper conduct only becomes constitutional error when the *impact* of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial."). It is apparent in this case that although the prosecutor's comments bearing upon the presumption of innocence were improper, they did not amount to constitutional error because the misstatements did not affect the outcome of the trial.

First, Frett's analogizing this case to *Mahorney v. Wallman*, 917 F.2d 469 (10th Cir. 1990) is unavailing. The prosecutor in that case explicitly told the jury, during *voir dire*, that the presumption of innocence was not designed to protect every defendant, but rather, only "those persons who are, indeed, not guilty of a crime." *Id.* at 471. He further elaborated that the presumption was "not intended to let those who are guilty escape justice." *Id.* Subsequently, in his rebuttal argument, the prosecutor explained to the panel that while they were duty-bound to presume the defendant innocent at the commencement of the trial, "things ha[d] changed." *Id.* Then, he offered a protracted explanation that the evidence at trial had removed the presumption of innocence, and that the presumption "no longer exist[ed]" and "[was] not there any more." *Id.*

Crucially, defense counsel's prompt and persistent objections to these misstatements were all expressly overruled by the trial court. *Id.* (indicating that defense counsel immediately objected to each of the prosecutor's statements, requesting that the jury be admonished to disregard them and moving for a mistrial, and that the trial court responded each time by overruling the objections and granting defense counsel an exception to its rulings). Essentially, therefore, the trial court in *Mahorney* sanctioned the prosecutor's impermissible arguments, girded them with the court's imprimatur and exponentially enhanced their potential prejudicial effect on the jury. *See Cardona v. State*, 185 So. 3d 514, 524-25 (Fla. 2016) ("The [improper] remarks were not isolated and were repeatedly objected to, and when those objections were overruled, it again stamped the judge's imprimatur of approval on the improper remarks."); *People v. Norton*, 164 A.D.2d 343, 563 N.Y.S.2d 802, 811 (N.Y. App. Div. 1990) ("[W]hen, as here, the court overrules the defendant's objections, and gives 'standing

to the statement of the District Attorney as legitimate argument,'. . . the possibility of prejudice is greatly enhanced.") (quoting *People v. Ashwal*, 39 N.Y.2d 105, 347 N.E.2d 564, 567, 383 N.Y.S.2d 204 (N.Y. 1976)). The trial court in *Mahorney* not only gave the appearance of approving the misconduct, but the appellate court found that it also abdicated its responsibility to specifically instruct the jury on the presumption of innocence. 917 F.2d at 473-74. The appellate court's prejudice determination was further influenced by the fact that the jury had been presented with two competing accounts of the events surrounding the crime, neither of which was confirmed or discounted by any extrinsic evidence. *Id.* at 474.

This case, however, is easily distinguishable from *Mahorney*, primarily in the brevity of the prosecutor's remarks and the ameliorative effect of the trial court's extensive instructions to the jury. Here, the prosecutor's statements encompassed two perfunctory lines made during rebuttal argument, neither of which garnered any objection from defense counsel. Second, in its preliminary instructions to the jurors, the Superior Court specifically directed, "the defendant is presumed innocent throughout the trial of this case." (JA at 226.) During the final instructions to the panel, the court also properly instructed the jury on the presumption of innocence as follows:

> In this, as in any criminal case, the Defendant is presumed to be innocent until he is proved to be guilty. Thus, Defendant[,] although accuse[d], begins the trial with a clean slate so to speak with no evidence against him. This presumption of innocence continues until overcome by proof establishing guilt beyond a reasonable doubt. The burden of proving each and every essential element of the crimes charged is upon the government and always upon the Government.
>
> . . . .
>
> The law does not require the Defendant to prove his innocence. Accordingly, you must assume the Defendant is innocent unless you're convinced beyond a reasonable doubt, after considering the evidence in the case that he is guilty. The presumption of innocence alone, however[,] is enough to acquit the Defendant if the People fail to prove their case beyond a reasonable doubt. You should evaluate the evidence admitted in this case and determine the innocence or guilt of the Defendant entirely in accordance with these instructions.

(JA at 678-79.)

■ The Superior Court, in its preliminary instructions, also cautioned the jurors that "closing arguments are not evidence," (JA at 226) and on at least three distinct occasions during final instructions, the trial judge reminded the jurors that they were not to consider the lawyers' statements and arguments as evidence. As we have repeatedly held, this Court "must assume that juries for the most part understand and faithfully follow instructions." *Cascen v. People*, 60 V.I. 392, 414 (V.I. 2014); *see Lingar v. Bowersox*, 176 F.3d 453, 460-61 (8th Cir. 1999) ("When counsel misstates the law, the misstatement is harmless error if the court properly instructs the jury on that point of law or instructs that the attorneys' statements and arguments are not evidence."); *Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) (even where there has been misleading argument by counsel, the jury is presumed to follow its instructions); *Francis v. Franklin*, 471 U.S. 307, 324 n.9, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."); *Monelle v. People*, 63 V.I. 757, 770-71 (2015).

Lastly, in contrast to *Mahorney*, Southwell's testimonial account of the murder was supported by the physical and testimonial evidence in the record, further diminishing any possibility of prejudice to Frett. Taking into account the entire proceeding, we find that although the prosecutor's statements constitute misconduct, the court's failure to correct those statements does not amount to plain error because the statements did not infect the trial with unfairness as to make the resulting conviction a denial of due process, thereby affecting Frett's substantial rights. *Fahie v. People*, 59 V.I. 505, 511 (V.I. 2013) ("To affect [an appellant's] substantial rights, the error must be prejudicial, which means that there must be a reasonable probability that the error affected the outcome of the trial." *Id.* at 511 (quoting *Elizee v. People*, 54 V.I. 466, 479 (V.I. 2010))) (internal quotation marks omitted).

### B. The People did not commit prosecutorial misconduct in its use of Southwell's plea agreement.

Frett argues that the prejudicial cumulative effect of three purported errors made by the People, with regards to Southwell's plea agreement, warrants the reversal of the conviction in this case. Frett claims that the

prosecutor: (1) inserted a subjective belief as to Southwell's plea agreement into this case; (2) misstated the terms of the plea agreement; and (3) used the plea agreement as substantive evidence against Frett. Whether viewed individually or collectively, these arguments are specious.

■■■ Certainly, Frett is correct that a co-defendant's guilty plea may not be considered substantive evidence of the defendant's guilt. *United States v. McGill*, 815 F.3d 846, 897 (D.C. Cir. 2016); *Gov't of V.I. v. Mujahid*, 990 F.2d 111, 115, 28 V.I. 284 (3d Cir. 1993). Such use of the plea "poses the threat that a defendant will be found guilty not on the basis of evidence against him, but on the basis of a shadow cast by cases against others." *United States v. Gambino*, 926 F.2d 1355, 1367 (3d Cir. 1991). Nonetheless, evidence of a testifying witness's plea agreement may be introduced for probative purposes, such as to allow the jury to accurately assess the witness's credibility, to eliminate concern that the jury may harbor concerning whether the government has selectively prosecuted the defendant, and to explain how the witness has first-hand knowledge concerning the events about which he or she is testifying. *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (citations omitted).

■■■ Frett contends that the prosecutor attempted to diminish the plea agreement by suggesting to the jury that Southwell's twenty-year sentence was lengthy, and that the prosecutor manipulated the plea agreement by implying that Southwell's sentences required him to spend thirty years in jail, as opposed to twenty. In advancing his argument, Frett refers to the prosecutor's following comments: "let's think about it, is 20 years such a great deal, 20 years of your life. Twenty years of John Southwell's life. He got 10 years also on the robbery." (JA at 612-13.) First, the context and sequence in which these comments arose are critical: these remarks were made in the People's rebuttal argument, after and in reply to Frett's emphasizing to the jury during *his* closing summation that Southwell and the People had "cut a deal." (JA at 605.) Thus, the prosecutor's remarks were an invited and permissible beckoning to the jury to independently determine whether "the deal" would have incentivized Southwell to offer perjured testimony. Frett's argument that the People manipulated the terms of the plea agreement is equally meritless. Indeed, the prosecutor did not overtly explain that the ten-year and twenty-year imprisonment terms were concurrent. However,

414

we fail to see how this fleeting statement prejudiced Frett, particularly considering that Southwell explicitly testified that the sentences were concurrent and the executed plea agreement—which was admitted into evidence on Frett's own request—unequivocally indicated that the People agreed to recommend concurrent sentences.

 Frett also asserts that the People repeatedly stressed to the jury that Southwell had taken responsibility for his role in the murder by entering into a plea agreement with the People. In Frett's estimation, the People therefore implied to the jurors that they should convict Frett to make him "take responsibility" as well. (Appellant's Br. at 19.) First, while the prosecutor referred to Southwell taking responsibility for his role in the crime, evidence of a co-defendant's guilt "is clearly admissible to show the witness's acknowledgement of participation in the offense." *United States v. Roth*, 736 F.2d 1222, 1226 (8th Cir. 1984); *accord United States v. Woods*, 764 F.3d 1242, 1246 (10th Cir. 2014). These remarks were obviously an extrapolation from the fact that Southwell had entered into a plea agreement with the People, and not an invitation to the jury to infer Frett's guilt as a result.

Second, the trial record is devoid of any evidence that the prosecutor encouraged the jury to make Frett take responsibility for the murder by returning a guilty verdict, and Frett does not refer to the same in his brief. We recognize that, in this context, the prosecutor's comments would have been improper if they sought to penalize Frett for choosing to not plead guilty, or summoned the jury to conjure up negative inferences about Frett's assertion of his constitutional right to a jury trial. But, a parsing of the trial court record uncovers no comments from the prosecutor condemning Frett, either explicitly or implicitly, for declining to enter into a plea agreement with the People. Because the People's remarks did not use Southwell's plea agreement as substantive evidence of Frett's guilt, this argument is spurious.

## C. The People did not engage in vouching or improper bolstering.

Frett contends that the prosecutor committed misconduct by improperly vouching for Southwell's credibility and bolstering his testimony. Frett premises these claims on the prosecutor's statements to the jury that Southwell: (1) testified truthfully; and (2) accepted responsibility for his role in the murder. (Appellant's Br. at 20.) As we have found no error in the

prosecutor's argument that Southwell had accepted responsibility for his participation in the murder, we proceed to analyze whether the prosecutor's comments on Southwell's veracity amounted to impermissible vouching. And, given that the alleged vouching was not objected to during the trial, we again apply plain error review.

In the People's closing argument, the prosecutor stated:

> Southwell entered into an agreement with the government . . . . The foundation . . . of this agreement was for him to testify truthfully in this matter, and he did. He came forward today and he told you everything that happened during that period. He told you all the details, all of the facts, and it's very consistent with what was shown in the video. It is very consistent with what occurred on October 28th during the police chase. So, he has testified truthfully.

(JA at 593-94.)

██ Prosecutorial vouching for the credibility of a government witness poses two dangers: "(1) such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and (2) the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Farrington v. People*, 55 V.I. 644, 657 (V.I. 2011) (citation omitted). However, to substantiate a claim that there was improper vouching, two criteria must be met: (1) "the prosecutor suggest[ed] to the jury that the witness is telling the truth (2) because of personal knowledge the prosecutor ha[d] about the witness' testimony or ability to be truthful." *Francis v. People*, 56 V.I. 370, 388 (V.I. 2012).

██ Based on an exhaustive review of cases analyzing vouching, the Third Circuit Court of Appeals, in *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998), enunciated the following precaution regarding this test:

> [I]t is not enough for a defendant on appeal to assert that the prosecutor assured the jury that a witness' testimony was credible. The defendant must be able to identify as the basis for that comment an explicit or implicit reference to either the personal knowledge of the prosecuting

416

attorney or information not contained in the record. It follows that where a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury that the credibility of the witness [is] based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching.

*Id.* at 187 (citations omitted).

 In subsequent Third Circuit cases, it has become even clearer that a statement merely asserting that a witness is testifying truthfully will not amount to improper vouching absent an indication that that declaration purports to be based on the prosecutor's personal knowledge or opinion of the witness's veracity or evidence not presented to the jury.

 For instance, in *United States v. Rivas*, 493 F.3d 131 (3d Cir. 2007), the prosecution stated of two witnesses: "they came here and they told you the truth about what happened." *Id.* at 138. Declining to view this argument as impermissible vouching, the Court of Appeals held that "the prosecution did not suggest it knew from extra-record evidence that [the witnesses] were telling the truth." *Id.* In *United States v. Lore*, 430 F.3d 190 (3d Cir. 2005), the prosecutor also stated that a witness had offered truthful testimony, while relying on evidence in the record for this assertion. The prosecutor argued, "ladies and gentlemen, you'll see that [the witness's testimony] was also corroborated by other witnesses, other documentation and other physical evidence . . . [and] was simply the truth based upon the testimony and based upon the evidence that was presented." *Id.* at 212. Again, the Court of Appeals found no improper vouching. First, the court observed that in deciding whether statements to the jury improperly vouched for a witness's credibility, a court considers them in the context in which they were given. *Id.* Then, the court elucidated that "[the prosecutor] did not base his assurance on claimed personal knowledge or evidence outside the record . . . [and] [r]ather than invoke information not contained in the record, the prosecutor urged the jury to consider 'the evidence that was presented.' " *Id.*

 Similarly, here, the People did not engage in impermissible vouching. First, the prosecutor did not err in arguing that Southwell's plea agreement required truthful testimony because Southwell had testified to that proviso and the plea agreement was in the record. *See United States v. Milan*, 304 F.3d 273, 290 (3d Cir. 2002) (no improper vouching where prosecutor inquired into witnesses' cooperation agreements requiring

417

truthful testimony in exchange for a leniency recommendation, as prosecutor "never made any statement that invited a plausible jury inference of extra-record proof of reliability in the government's exclusive possession"); *United States v. Saada*, 212 F.3d 210, 225 (3d Cir. 2000) ("Because the prosecutor's comments as to why [the cooperating witnesses] had an incentive to tell the truth were based on th[e] evidence, they constituted proper argument and not improper vouching.").

■■ ■ Moreover, the prosecutor never insinuated that she — for some extra-evidentiary reason — knew or was assuring the jury that Southwell was telling the truth. Crucially, a contextual reading of the prosecutor's comments illustrates that immediately after she averred that Southwell had been truthful, she directed the jury's attention to video footage which they had viewed. As a whole, therefore, the prosecutor was not assuring the jury that Southwell was being truthful based on any personal knowledge or information she harbored. *United States v. Young*, 470 U.S. 1, 11, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."); *Mulley v. People*, 51 V.I. 404, 414 (V.I. 2009) ("Improper 'vouching' occurs where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury."). Admittedly, given that the *jurors* are the ultimate arbiters of witnesses' credibility, the phraseology of the prosecution's remarks was, arguably, ill-advised. However, for the reasons explicated, we do not conclude that the People engaged in improper vouching.

Frett requests this Court to view the People's "multiple, flagrant examples of prosecutorial misconduct" cumulatively, as a basis for reversal. (Appellant's Br. at 21.) However, as explained above, the only error made by the prosecutor was her incorrect assertion during her rebuttal argument regarding the non-existence of the presumption of innocence. When viewed against the entire trial record, that solitary error provides no grounds for reversal of this case.

### D. The Superior Court committed no error in its jury instructions.

Next, Frett argues that doubt infects the validity of the verdict because the Superior Court gave the jury illegal instructions. As grounds for this

claim, Frett identifies the following instruction to the panel: "[i]f the accused be proven guilty, say so. If proven not guilty, say so." Frett postulates that this instruction negates the presumption of innocence and inverts the burden of proof. Again, because defense counsel failed to object to this jury instruction, a new trial is warranted only if the court erred in a manner which satisfies the plain error test.

 Preliminarily, we note that "[a] jury instruction will generally not be invalidated unless it is shown that the instruction substantially and adversely impacted the constitutional rights of the defendant and impacted the outcome of the trial." *Freeman v. People*, 61 V.I. 537, 544 (V.I. 2014) (citing *Prince v. People*, 57 V.I. 399, 405 (V.I. 2012)). And, "a claim of improper instruction will rarely justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* Importantly, this Court has long reiterated that "[a] challenge alleging reversible error in jury instructions must be considered in light of the complete jury instructions and the whole trial record." *Monelle*, 63 V.I. at 763 (collecting cases).

 While the trial court's instruction — read in complete isolation — could be taken to address burden-shifting, this is not a case where the court failed to instruct the jury on the presumption of innocence and the People's burden of proof. On the contrary, the Superior Court explained both legal tenets at length, going so far as to twice remind the jury that the burden of proof "never shifts" to the defendant. (JA at 678-79.) As the United States Court of Appeals for the First Circuit concluded when examining a practically identical instruction, "[i]t is highly improbable that the jury would have been so impressed by that one passage in the charge as to have ignored the multiple warnings against presuming appellant had to prove that he was not guilty." *United States v. Thomann*, 609 F.2d 560, 566 (1st Cir. 1979).[2] In that case, the First Circuit emphasized, as we do here, that a single jury instruction must be viewed in the context of the overall charge. *Id.* Since the trial court had properly instructed the jury on the presumption of innocence and the government's burden of proof, the Court of Appeals found no grounds for reversal. *Id.; United States v. Teresa*, 420 F.2d 13, 18-19 (4th Cir. 1969) (Because jury instructions, taken as a whole, specifically stated the basic rules by which

---

[2] The jury instruction at issue was: "[i]f either or both of the defendants be proven guilty, say so. If either or both of the defendants be proven not guilty, say so." *Thomann*, 609 F.2d at 565.

defendant's guilt or innocence was to be determined, no reversible error found in the following charge: "[i]f the accused be proved guilty, say so. If proved not guilty, say so.").

When examined against the backdrop of the entire jury instructions, we do not believe that the jury was misguided by the trial court's charge. Accordingly, this single instruction did not impinge upon Frett's right to a fair trial or impact the outcome of the trial. Nonetheless, we do not endorse utilization of this jury instruction and think it wise for the trial court to either omit this instruction altogether or modify its language to avoid any inadvertent suggestion to the jury that the defendant bears a burden to prove his or her lack of guilt.

### E. The trial court did not violate Frett's due process rights by failing to instruct the jury on the specific and limited uses of Southwell's plea.

Frett argues that the trial court erred by failing to instruct the jury on the limited use of Southwell's plea. He claims that in addition to instructing the jury to examine Southwell's plea with "great care and caution," the trial court should have, additionally, precisely addressed the permissible purposes for which the guilty plea could be used. (Appellant's Br. at 24.) Frett neither objected to the trial's court's failure to instruct the jury in the manner which he now insists, nor requested the jury instruction which he presently demands. Therefore, we review for plain error.

When Frett's prior case was before this Court, we determined that the trial court should give the "great care and caution" instruction when requested. We further directed that unless there exists a reason compelling its omission, this instruction should be routinely given when the trial court is informing the jury how to weigh the credibility of accomplices and witnesses cooperating with the government in return for some benefit. *Frett*, 59 V.I. at 515. We urged the Superior Court to reconsider, on remand, its decision to exclude such language from its instructions to the jury, if requested by the defendant. *Id.*

██ During Frett's trial in 2015, the court instructed the jury in compliance with this directive. The court explained that the government was permitted to present Southwell's testimony; urged the jury to consider such testimony with great care and caution; instructed the jurors to make their own determination on whether Southwell's testimony may have been influenced by the plea agreement; and directed the jurors to

give the testimony the weight they believed it deserved. (JA at 660-61.) The Superior Court's detailed instructions were adroitly crafted and given in accordance with this Court's opinion. Therefore, the trial court did not commit any error, much less plain error, in failing to further instruct the jury as to the precise ways in which the guilty plea could not have been used. *See Woodrup v. People*, 63 V.I. 696, 721 (V.I. 2015) ("Given that the Superior Court's instruction in this case was extensive and detailed, and tracked the instruction we mandated . . . the Superior Court did not commit error — let alone plain error — even if it did not use the exact language we did in that decision.").

 We nevertheless turn to the issue of whether this Court should, at this juncture, adopt the standard that the trial court must also specifically instruct the jury on the limited use of a co-defendant's testimony, by explaining that a co-defendant's plea must not be used as substantive evidence of a defendant's guilt. We are mindful that "[t]he limitations on guilty plea evidence . . . protect significant interests." *Mujahid*, 990 F.2d at 116. Likewise, this Court is cognizant that "admitting a co-defendant's guilty plea can jeopardize the fundamental fairness of a criminal trial because of the likelihood that the jury may impute a co-defendant's guilt to the defendant." *Id.* Therefore, we hold that where a co-defendant's guilty plea is being admitted in a defendant's trial, the court must specifically instruct the jury that this plea is not proof of the defendant's guilt and must be disregarded when determining the defendant's guilt or innocence. *Id.* Where appropriate, the Superior Court may also wish to consider the use or modified use of Third Circuit Criminal Model Jury Instruction 4.19,[3] which encapsulates the following principle regarding the limited use of the co-defendant's plea:

> The jury . . . should be instructed that it may not consider the guilty plea and/or plea agreement as evidence that the defendant is guilty of the

---

[3] The Third Circuit Court of Appeals Criminal Jury Instruction 4.19 provides in relevant part:

[You must not consider (name of witness)'s guilty plea as any evidence of (name of defendant)'s guilt. (His)(her) decision to plead guilty was a personal decision about (his)(her) own guilt. Such evidence is offered only to allow you to assess the credibility of the witness; to eliminate any concern that (the defendant) (any of the defendants) has been singled out for prosecution; and to explain how the witness came to possess detailed first-hand knowledge of the events about which (he)(she) testified. You may consider (name of witness)'s guilty plea only for these purposes.].

offenses with which he/she is charged, but rather that such evidence is offered only to allow the jury to assess the witness's credibility, to eliminate any concern that the defendant has been singled out for prosecution, or to explain how the witness possessed detailed first-hand knowledge regarding the events about which he or she testifies.

*Universal Rehab. Servs.*, 205 F.3d at 668. Lastly, we refer the Superior Court's attention to 5 V.I.C. § 740(4), which directs that where proper, the jury is to be instructed that "[t]he testimony of an accomplice ought to be viewed with distrust and the evidence of the oral admissions of a party with caution."

### F. The trial court's error in *sua sponte* restricting defense counsel's summation did not violate Frett's constitutional rights.

■■■ A trial court possesses broad discretionary power over the scope of counsel's closing arguments. *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975); *United States v. Eldridge*, 984 F.2d 943, 946 (8th Cir. 1993); *Gov't of the V.I. v. Commissiong*, 706 F. Supp. 1172, 1185 (D.V.I. 1989) ("A trial court has broad discretion to limit the time and scope of closing arguments as long as the defendant is permitted to make all legally tenable arguments supported by the facts brought out at trial."). However, an improper limitation on closing summation may encroach upon a defendant's Sixth Amendment right to counsel and a defendant's due process rights. *See State v. Frost*, 160 Wn.2d 765, 161 P.3d 361, 365-66 (Wash. 2007); *Goodrich v. State*, 854 So. 2d 663, 664-65 (Fla. Dist. Ct. App. 2003).[4] The United States Supreme Court has further instructed that improper restriction on closing argument, even where it violates the Constitution, does not necessarily rank as structural error requiring automatic reversal. *Glebe v. Frost*, 574 U.S. ___, 135 S. Ct. 429, 430-31, 190 L. Ed. 2d 317 (2014) ("Only

---

[4] The Fifth and Sixth Amendments, as well as the Due Process Clause of the Fourteenth Amendment, are applicable to the Virgin Islands by virtue of section 3 of the Revised Organic Act. 48 U.S.C. § 1561 ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States . . . the first to ninth amendments inclusive [and] the second sentence of section 1 of the fourteenth amendment."). *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 315 n.11 (V.I. 2014).

the rare type of error — in general, one that infect[s] the entire trial process and necessarily render[s] [it] fundamentally unfair — requires automatic reversal. None of our cases clearly requires placing improper restriction of closing argument in this narrow category." (citations and internal quotation marks omitted)). The Court expounded, "[e]ven assuming that *Herring* established that *complete denial* of summation amounts to structural error, it did not clearly establish that the *restriction* of summation also amounts to structural error." *Id.* at 431.

Frett argues that the trial court erred by its *sua sponte* action in interrupting his closing argument, which enabled the subsequent jury instructions to undermine his entire core defense. Frett complains of the following interaction between his counsel and the trial judge, and the court's admonition to the panel:

> [Attorney Joseph:] The [c]ourt will tell you . . . [that] you must weigh with great caution the testimony you heard from Mr. Southwell because he has an incentive. This for that. You want me to say Frett did it, and I['m] going [to] get a break. That's [Frett's] problem . . . [I] can't spend the rest of my life in jail.
>
> The Court: Sustained. Ladies and gentlemen any term of incarceration, if any, is within the sole province of the [c]ourt. Do not consider that when making your determination.

(JA at 604-05.)

▇▇ We glean that Frett sought to underscore Southwell's supposed incentive to falsify his testimony by highlighting the variance between the sentence Southwell potentially faced — life imprisonment — and that which he received subsequent to the plea agreement. On one hand, there is no indication in the trial court record that the jury was specifically presented with evidence that Southwell was facing a mandatory life sentence prior to his plea agreement. Nevertheless, closing arguments "represent the parties' last, best chance to marshal the evidence and persuade the jurors of its import," *United States v. Taylor*, 54 F.3d 967, 977 (1st Cir. 1995), and Frett's theory that Southwell had an incentive to testify mendaciously was warranted by the testimony and plea agreement which had been entered into evidence. Further, even assuming that the jurors did not possess knowledge that the maximum penalty for first-degree murder is life imprisonment, they could have easily and

423

reasonably deduced that Southwell was subject to a considerably lengthier and/or harsher sentence before he consummated the plea agreement with the People.

█ █ █ As counsel is allowed latitude to vigorously argue reasonable inferences from the evidence adduced at trial, we agree that the court's instruction to the jury was in error. *James v. People*, 59 V.I. 866, 888 (V.I. 2013) ("[T]he cardinal rule of closing argument [is] that counsel must confine comments to evidence in the record and to reasonable inferences from that evidence.") (citing *United States v. Lopez-Medina*, 596 F.3d 716, 740 (10th Cir. 2010)); *United States v. Weatherly*, 525 F.3d 265, 272 (3d Cir. 2008) ("It is permissible for counsel to argue inferences [which] flow logically and convincingly from the facts in the record."); *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300, 309 (Pa. 1987) ("[A] defense attorney must have reasonable latitude in presenting a case to the jury and must be free to present his or her arguments with 'logical force and vigor.' Counsels' remarks to the jury may contain fair deductions and legitimate inferences from the evidence presented during the testimony." (citations omitted)).

We do not accept, however, the assertion that Frett was denied his due process right to a "meaningful opportunity to present a complete defense," *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), or his Sixth Amendment right to make final arguments on his theory of the defense, in contravention of *Herring v. New York*, 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). While cross-examining Southwell, defense counsel questioned him on the offenses with which he was initially charged, the charges to which he ultimately pleaded guilty and the People's sentencing recommendations under the plea agreement, before requesting that the executed plea be admitted into evidence. Further, defense counsel asked Southwell whether he had been told that he "could get early parole or a reduced sentence," if Frett were convicted. (JA at 535.) Frett's counsel also unequivocally stated to Southwell, during cross-examination, "you don't know what the truth is and the truth is Mr. Frett did not shoot Mr. Lerner. You did it." (JA at 546.) Most tellingly, during his closing summation and without the court's interjection, Frett's counsel posited to the jury:

> Yes, [Southwell's] facing first degree murder charges. He's facing first degree robbery. He's facing reckless endangerment, and so they cut a

deal. And so the [c]ourt will tell you the Government is permitted to present testimony of someone who has reached a plea bargain with the Government. And they get some benefit in exchange for their testimony, but you should treat such testimony with great care and caution.

(JA at 605.)

The thrust of the defense theory, "that Southwell was not credible given his incentive to lie and implicate Frett," (Appellant's Br. at 31) was exceedingly apparent to the jury. Without question, Frett was freely permitted his trial strategy of undermining Southwell's credibility by challenging his motives for testifying.[5] For these reasons, we conclude that the court's errors did not deny Frett his right to a fair trial, and this issue provides no justification for reversal.

### G. The trial court did not err in allowing Judge Brenda J. Hollar to testify.

According to Frett, the trial court erred by allowing Lerner's supervisor, retired Judge Brenda J. Hollar, to testify as a fact witness during the trial. He argues that Judge Hollar's testimony was unduly prejudicial so as to outweigh its probative value. We review the Superior Court's evidentiary rulings for an abuse of discretion, unless the court's decision involves application of a legal precept, in which case we exercise plenary review. *Simmonds v. People*, 59 V.I. 480, 485-86 (V.I. 2013).

Rule 403 of the Federal Rules of Evidence[6] provides as follows: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:

---

[5] The fact that defense counsel was interrupted when specifically stressing the variance between life imprisonment and the sentences Southwell actually received also did not eliminate defense counsel's entire theory, as Frett contends. The difficulty with this argument is that the trial record contained no evidence that Southwell was facing a mandatory life sentence in the first place. Frett's counsel neither questioned Southwell on the maximum penalty nor cross-examined him on the number of years by which his sentences were reduced in accepting the plea. And, such information was not contained in the plea agreement which Frett requested be entered into evidence.

[6] The Virgin Islands Legislature adopted the Federal Rules of Evidence to govern the admission of evidence in the Superior Court on April 7, 2010. 2010 V.I. Sess. Laws 50 (Act No. 7161, § 15(b)). We note that under Promulgation Order 2017-0002, the Virgin Island Rules of Evidence are made effective March 21, 2017, and under Rule 403 of those rules, the Virgin Islands retains FED. R. EVID. 403's balancing test.

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Because particular deference is afforded to the court's determinations from Rule 403 balancing, "we may not disturb the trial court's determination unless we find that the court acted arbitrarily or irrationally." *Alexander v. People*, 60 V.I. 486, 494 (V.I. 2014). Likewise, there is a presumption in favor of admitting relevant evidence, and "judicial restraint is . . . desirable" when reviewing a trial court's ruling under Rule 403. *Francis*, 56 V.I. at 385-86. Importantly, "careful limiting instructions to the jury have been held to mitigate the potential prejudice arising from evidence deemed admissible following a Rule 403 balancing." *Tyson*, 59 V.I. at 424.

 First, we are unpersuaded by Frett's contention that he was prejudiced by the jury's purported inclination to believe Judge Hollar's testimony. The testimony was both brief and factual and it does not appear that Frett took issue with its veracity or otherwise considered it objectionable. More significantly, however, in deciding to permit the testimony of Judge Hollar, the court properly balanced its probative value against its prejudicial effect. First, the court appropriately requested a proffer as to the content of the testimony. Then, the court questioned the People at length as to the relevance of the testimony, to which the People averred that they sought to relay the events which led to the search for Lerner and explained that Judge Hollar would identify Lerner in an exhibit. The court then heard Frett's argument as to the potential prejudice of the testimony, before taking the matter under advisement.

Upon deciding to allow the testimony, the court, guided by *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (W. Va. 2006), implemented further precautionary measures to mitigate any potential prejudicial effect on the jury. First, during *voir dire*, the prospective jurors were questioned about their knowledge of or affiliation with Judge Hollar. Additionally, the trial judge prohibited character testimony and directed that Judge Hollar be referred to as "Ms. Hollar." (JA at 267-70.) Moreover, the court instructed the jurors, both prior and subsequent to Judge Hollar's testimony, that they were the sole determiners of the weight to be given to the judge's testimony, which was not entitled to more credence based on Judge Hollar's former position. Having considered these factors, we conclude that the trial court did not abuse its discretion in this regard, and we find no reason to disturb its ruling on this issue.

## H. The evidence was sufficient to support the jury's verdict.

Frett argues that the trial court erred in denying his Rule 29 motion for judgment of acquittal, contending that the evidence in this case was insufficient to support the jury's findings. Primarily, Frett contends that he was improperly convicted by the testimony of a single interested witness, whose testimony was unreliable. We summarily reject this argument.

▮ First, we underscore that this Court must apply a highly deferential standard of review to the jury's verdict, as we do not serve as usurpers of the role of the jury. We do not engage in second-guessing the evidence presented at trial, and we are not responsible for re-weighing the credibility of witnesses. *Thomas v. People*, 60 V.I. 183, 191 (V.I. 2013) (citing *Augustine v. People*, 55 V.I. 678, 684 (V.I. 2011)); *Connor*, 59 V.I. at 305 (collecting cases). Additionally, we have long reiterated that the testimony of a single witness is sufficient to support a conviction, even if uncorroborated and contradicted by other testimony. *Percival v. People*, 62 V.I. 477, 487 (V.I. 2015) (quoting *Connor*, 59 V.I. at 291); *Webster v. People*, 60 V.I. 666, 681-82 (V.I. 2014); *Cascen*, 60 V.I. at 406 n.4; *Francis v. People*, 57 V.I. 201, 211 (V.I. 2012). Lastly, Frett presented the issue of Southwell's credibility to the jury, and it was entirely within the jury's province to accept or reject Southwell's account of the events surrounding Lerner's murder. Therefore, this Court is mindful that a "sufficiency challenge is not a vehicle to relitigate credibility arguments that were unpersuasive to the trier of fact." *Webster*, 60 V.I. at 681 (quoting *Billu v. People*, 57 V.I. 455, 466 (V.I. 2012)) (quotation marks omitted).

▮ We have previously explicated the standard for reviewing an appellant's sufficiency-of-the-evidence claim. This Court must "view the evidence in the light most favorable to the People, and affirm the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Webster*, 60 V.I. at 678-79 (quoting *Cascen*, 60 V.I. at 401); *see Cavazos v. Smith*, 565 U.S. 1, 7, 132 S. Ct. 2, 181 L. Ed. 2d 311 (2011). Therefore, "a finding of insufficiency of the evidence should be confined to those cases in which the prosecution's failure to establish the elements of the crime is clear." *Fahie v. People*, 62 V.I. 625, 630 (V.I. 2015).

▮ Frett's argument that there was insufficient evidence to sustain a conviction is belied by the evidence in the record. While under oath,

Southwell testified that on the morning of October 26, 2008, Lerner stopped to offer a ride to both him and Frett. Southwell further testified that when in the car, Frett asked Lerner if he had ever been robbed before, while holding a black .380 caliber handgun. Frett forced Lerner into the back seat of the vehicle, and then drove to a grocery store in Estate Dorothea, where he and Southwell purchased items with Lerner's credit card. The jury also viewed video surveillance footage depicting Frett and Southwell at that store. Next, Southwell testified that Frett drove to Estate Hull Bay, where Southwell opened the trunk and Frett put Lerner inside. Frett then drove Lerner's car to Estate Bordeaux and stopped at a dirt road. Southwell explained that he and Frett removed Lerner from the trunk and proceeded to walk along a trail. According to Southwell, Lerner asked Frett if he was about to be killed, in response to which Frett ordered Lerner to "turn around [and] shut up." (JA at 478.) Southwell testified that, standing four to five feet away, he then saw Frett shoot Lerner in the back of his head, which was consistent with autopsy findings. When viewed in the light most favorable to the People, there was ample evidence to convict Frett beyond a reasonable doubt of all criminal charges. The trial court, therefore, did not err in denying Frett's Rule 29 motion for judgment of acquittal.

## IV. CONCLUSION

Although the prosecutor misrepresented the law on the presumption of innocence during her closing argument, these remarks did not infect the trial with such unfairness that the conviction was a denial of Frett's due process rights. The trial court did not err either in its jury instructions on the use of Southwell's plea or its decision to permit the testimony of retired Judge Brenda J. Hollar. Further, the court's erroneous interjection and limitation of Frett's closing argument did not violate Frett's due process rights. Lastly, the jury's verdict was supported by sufficient evidence. Accordingly, we affirm the Superior Court's October 14, 2015 judgment and commitment.