

**FILED**
July 30, 2024 10:10 AM
SX-2020-MC-00027
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

AURIEL D. FRETT,

                Petitioner,

v.

GOVERNMENT OF THE VIRGIN
ISLANDS; ALBERT BRYAN, JR.,
GOVERNOR; GORDON RHEA, ESQ.,
ATTORNEY GENERAL OF THE VIRGIN
ISLANDS NOMINEE; WYNNIE
TESTAMARK, DIRECTOR, VIRGIN
ISLANDS BUREAU OF CORRECTIONS;
DANA GRANT, ACTING WARDEN, JOHN
A. BELL CORRECTIONAL FACILITY[1],

                Respondents.

**CASE NO. SX-2020-MC-00027**

PETITION FOR WRIT OF
HABEAS CORPUS

2024 VI SUPER 28

## MEMORANDUM OPINION AND ORDER

¶ 1    THIS MATTER is before the Court on Petitioner Auriel Devon Frett's ("Frett") Verified Petition for Habeas Corpus ("Petition"), filed March 18, 2020. Because the Court finds that Petitioner does not state a prima facie case for relief, his Petition will be denied.

## BACKGROUND

¶ 2    Frett was tried and convicted of the first-degree murder of Gabriel Lerner ("Lerner"), among other offenses, by the Superior Court's September 20, 2011, Judgment and Commitment in ST-2008-CR-00452. On appeal, the Supreme Court vacated those convictions and remanded the case for a new trial.[2] Following the retrial, Frett was adjudged guilty of first-degree murder, first-degree assault and kidnapping for robbery, and was sentenced to life imprisonment without parole by Second Order of Judgment and Commitment entered October 14, 2015. Those convictions were affirmed on appeal.[3]

---

[1] Pursuant to V.I. R. Civ. P. 25(d), the named Respondents are automatically substituted as parties for the public officials originally named who have since ceased to hold such offices.

[2] *Frett v. People*, 58 V.I. 492 (V.I. 2013).

[3] *Frett v. People*, 66 V.I. 399 (V.I. 2017).

¶ 3     John Southwell, a minor at the time, faced first-degree murder and related charges as an adult in connection with Lerner's death (ST-2010-CR-00382) following Transfer Order of the Family Division (June 10, 2010, ST-2008-JD-00105). Pursuant to a plea agreement filed September 20, 2010, Southwell was convicted of second-degree murder and first-degree assault-robbery by Order of Judgment and Commitment entered December 1, 2010, and was sentenced, respectively, to concurrent terms of incarceration of twenty-years and ten-years.

¶ 4     Pursuant to the plea agreement, Southwell agreed to testify truthfully, and Southwell did testify as a prosecution witness against Frett at Frett's first trial (on March 1, 2011) and at Frett's second trial (on June 10, 2015).[4] In Frett's second trial, as summarized by the Supreme Court, Southwell testified that during the morning of Sunday, October 26, 2008, Lerner offered him and Frett a ride towards Red Hook. Frett was in the back seat directly behind Lerner, holding a handgun, and asked Lerner if he had ever been robbed. Lerner gave his wallet to Frett, then moved to the back seat at Frett's direction. Frett drove to a local grocery store where he and Southwell used Lerner's credit card to purchase items. The trial jury viewed video surveillance footage that showed Frett and Southwell entering and exiting the store. Southwell testified that he and Frett returned to the vehicle and Frett drove to Estate Hull Bay, where Southwell opened the trunk and Frett forced Lerner inside. Southwell testified that Frett then drove to Estate Bordeaux and stopped at a dirt road. Southwell and Frett removed Lerner from the trunk, and the three walked along a trail where Frett ordered Lerner to turn around, then shot Lerner in the back of his head. *See Frett v. People*, 66 V.I. at 406.

¶ 5     When he failed to report to work as a judicial law clerk for the Superior Court on Monday, October 27 and Tuesday, October 28, 2008, Superior Court Marshals and Virgin Islands Police Department Officers sought to locate Lerner. Calls to his phone went unanswered. They went to his home but neither he nor his car was there. The police issued an all-points bulletin for Lerner's vehicle and, shortly thereafter, an officer reported seeing the vehicle in the area of Estate Contant, and began to pursue the vehicle, which accelerated away from him. Eventually, while proceeding down a hill, Lerner's car collided with a marked police vehicle. Two men exited the vehicle and ran into the bush on the side of the road. Police searched the area and finally located and apprehended Frett and Southwell after a search of more than three hours. *See Frett v. People*, 58 V.I. at 495-96.

---

[4] In pertinent part, the plea agreement provided: "As part of this offer, Mr. Southwell will be required to testify truthfully at the trial of People of the Virgin Islands v. Auriel Devon Frett, Crim. No. F452/08. Mr. Southwell's testimony must, in sum and substance, also be consistent with the statement he provided to the Virgin Islands police detectives and executed on or about October 28, 2008." *People v. John J. Southwell*, (ST-2010-CR-00382), Department of Justice Plea Offer, September 3, 2010, accepted September 16, 2010, filed September 20, 2010 (CMS Doc. No. 47).

¶ 6    Prior to Frett's first trial, on May 19, 2010, the court held a hearing on the People's motion seeking Frett's pretrial detention.[5] VIPD Detective Sergeant Jason Marsh, chief investigator for Lerner's homicide, testified about statements made by Southwell and Frett upon their apprehension on October 28, 2008.[6] In the presence of his mother, Southwell gave a statement that "led to the discovery of corroborative evidence." Specifically, investigators retrieved Lerner's credit card and court identification card in a gut to which Southwell had directed them, adjacent to the Mid-Town Guest House where Frett, a British Virgin Islands national, had been staying. "The investigators also found the firearm described as a Bursa .380 in the trunk of Gabriel Lerner's vehicle on October 28th, after searching the vehicle based upon the minor [Southwell]'s statement. Finally, investigation revealed that the slug retrieved from the skull of Gabriel Lerner was shown through forensic testing to have been fired from the firearm that was recovered from Gabriel Lerner's vehicle." *People v. Frett*, 2010 V.I. LEXIS 44, at *6 (V.I. Super. Ct. June 22, 2010).

¶ 7    On October 28, 2008, Sergeant Marsh, Southwell and his mother traveled to Estate Fortuna and, following the direction of Southwell, found Gabriel Lerner's dead body with a gunshot wound to the back of the head. *Id.* at 11.

¶ 8    The only other witness at the May 19, 2010, pretrial detention hearing was VIPD Officer Jason Jackson. Officer Jackson testified that the Bursa .380 that was discovered in the trunk of Lerner's car on October 28, 2008, and later determined to have been the weapon used in the homicide of Lerner, was his weapon that had earlier been stolen from his personal residence while he was away in Dominica. Officer Jackson's son had seen Frett in the backyard of the residence around the same time that the weapon was reportedly stolen. *Id.* at 4-5, 11.

¶ 9    Frett's first trial convened on February 28, 2011, wherein the People charged Frett by Amended Information with Count One - Murder in the First Degree; Count Two - Unauthorized Use of a Firearm During the Commission of a Murder; Count Three - Assault in the First Degree - Robbery; Count Four - Unauthorized Use of a Firearm During the Commission of a First Degree Assault; Count Five - Kidnapping for Robbery; and Count Six - Unauthorized Use of a Firearm

---

[5] A pretrial detention hearing does not require the same adherence to the rules of evidence applicable at trial. Beyond the admissibility of hearsay evidence, the People's burden of proof at a detention hearing is only "to prove by clear and convincing evidence that the defendant committed the crime of first degree murder." *Williams v. People*, 53 V.I. 514, 522 (V.I. 2010) (citing *Browne v. People*, 50 V.I. 241, 260-63 (V.I. 2008)). Nonetheless, the facts adduced in the various proceedings that form the record of the prosecution of Frett are relevant to the ultimate determination here of whether Frett has set forth a prima facie case that he is wrongfully detained.

[6] Frett's statement was suppressed in Frett's first trial, the court finding that the statement had been unlawfully taken after Frett had requested the assistance of counsel. Nonetheless, the statement was admitted as substantive evidence on cross-examination of Frett at trial, providing the basis for the reversal of Frett's conviction on appeal. *See* 58 V.I. at 502-09.

During the Commission of a Kidnapping.[7] At the close of the People's evidence, on March 2, 2011, Frett made a Rule 29 motion for judgment of acquittal that was denied.[8] The Rule 29 motion was renewed on March 3, 2011 at the close of all the evidence. The trial court denied the motion as to Counts One, Three and Five, but took the motion under advisement as to the firearms offenses charged in Counts Two, Four and Six. Frett was found guilty on all counts on March 4, 2011, and thereafter filed a renewed motion for acquittal or new trial pursuant to Rules 29 and 33.

¶ 10    By Memorandum Opinion and Order entered July 12, 2011, the court granted the motion for acquittal as to the firearms offenses, and Counts Two, Four and Six were dismissed with prejudice.[9] Accordingly, after remand from the Supreme Court, following the dismissal with prejudice of the firearms offenses, in his second trial, by Second Amended Information, Frett was charged only with three offenses: First Degree Murder; First Degree Assault-Robbery; and Kidnapping for Robbery.

¶ 11    By his Petition, Frett claims that "Auriel Frett did not kill Gabriel Lerner." Petition, at 1. Petitioner bases his claim for relief on an Affidavit of George Greene ("Greene Affidavit"), a former forensic officer for the Virgin Islands Police Department.[10] The Greene Affidavit describes "information [that] was relayed to me by a jailhouse informant." Greene Affidavit, ¶ 6. The Affidavit does not indicate when the information was provided to Greene, but states that he was told that Southwell, "while being detained on charges that he killed Lerner, was bragging about

---

[7] The Amended Information included a Count Seven – Reckless Endangerment in the First Degree. The court dismissed that Count before the case went to the jury. *See People v. Frett*, 55 V.I. 294, 297 (V.I. Super. Ct. 2011).

[8] At the time, the Federal Rules of Criminal Procedure applied in the Superior Court, pursuant to since repealed Superior Court Rule 7.

[9] Despite the evidence presented at the detention hearing concerning the nexus between the .380 Bursa handgun discovered in Lerner's trunk on October 28, 2008, the People's trial evidence was found deficient. "In this matter, although the parties stipulated to the fact that Defendant was unauthorized to own a firearm, the only evidence the People introduced were that: (1) Defendant had an [sic] firearm, (2) Defendant obtained the firearm from the personal residence of a police officer, Officer Jackson, (3) Defendant had an alleged gun on his lap in the car and (4) that some alleged gun made a loud 'pow' noise. The People did not provide any nexus between the firearm that Defendant obtained from Officer Jackson's residence, the alleged firearm that he had in his lap in the vehicle, the alleged firearm that was used in the shooting and the slug that was removed from Lerner's head. In addition, there is no evidence that the alleged gun or guns were operable. Although the People's expert pathologist testified that the victim died of a gunshot wound to the head, the nexus between the slug head found in the victim and the alleged gun or guns in Defendant's possession was never established. In other words, the People failed to introduce sufficiently conclusive evidence, such as the operability of the alleged firearm, to enable a reasonable juror to draw the inference that Defendant engaged in unauthorized use of a firearm during the commission of a crime of violence." 55 V.I. at 301.

[10] Although the March 18, 2020 Petition refers to the Greene Affidavit as Exhibit 1, no Affidavit (or any other exhibit) accompanied the Petition as filed. Rather, without filing any notice or explanation, more than two and a half years later, on October 19, 2022, Petitioner's counsel filed the Greene Affidavit, which was signed and notarized October 19, 2022.

how he outsmarted police in the concealment of the firearm used in the murder, where it was hidden and how stupid the officers were in not finding it." *Id.* ¶ 5. Following receipt of "this information, we decided to do a more extensive search of the vehicle and found the firearm in question underneath the carpet in the trunk of the vehicle. The vehicle had been searched and inventoried before, therefore, had this information not been known to me or other officers, more likely than not the firearm would not have been found." *Id.* ¶¶ 7-8.

¶ 12    Although not stated within the Petition, Frett apparently only became aware of the contents of the Greene Affidavit after his trials. He claims that this newly discovered evidence entitles him to habeas relief in that the People "intentionally suppressed evidence," and "knowingly allowed Southwell to commit perjury." Petition, at 1.

## STANDARD OF REVIEW

¶ 13    The Revised Organic Act provides that "[a]ll persons shall have the privilege of the writ of habeas corpus and the same shall not be suspended except as herein expressly provided." Revised Organic Act of 1954 § 3; 48 U.S.C. § 1561. Title 5 V.I.C. § 1303 and V.I. H.C.R. 1(c) grant the Superior Court of the Virgin Islands authority to hear petitions for writ of habeas corpus. "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." 5 V.I.C. § 1301. "Any person who believes he or she is unlawfully imprisoned or detained in custody, confined under unlawful conditions, or otherwise unlawfully restrained of his or her liberty, may file a petition for a writ of habeas corpus to seek review of the legality of that imprisonment or detention." V.I. H.C.R. 2(a)(1).

¶ 14    "The United States Supreme Court has repeatedly held that, at a minimum, the common law writ of habeas corpus encompasses a right to remedy constitutional violations." *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 297 (V.I. 2014). Because the presumption of innocence does not apply during habeas proceedings as "[w]hen a defendant seeks to challenge the determination of guilt after he has been validly convicted and sentenced, it is fair to place on him the burden of proving his innocence, not just raising doubt about his guilt." *Fahie v. Gov't of the V.I.*, 2020 VI 6 ¶ 18, 73 V.I. 443, 452 (V.I. 2020) (quoting *Herrera v. Collins*, 506 U.S. 390, 443 (1993)).

¶ 15    The Virgin Islands Habeas Corpus Rules provide:

> When presented with a petition for a writ of habeas corpus, within the period(s) specified in this Rule the Superior Court must first determine whether the petition states a prima facie case for relief -- that is, whether it states facts that, if true, would entitle the petitioner to discharge or other relief -- and, in its discretion, may also determine, after providing the petitioner with reasonable notice and a right to be heard, whether the stated claims are for any reason procedurally or substantively barred as a matter of law.

V.I. H.C.R. 2(b)(1).

> The court must issue a writ of habeas corpus if the petitioner has alleged, prima facie, grounds showing entitlement to relief and the claims are not legally barred. In assessing whether the petitioner would be entitled to relief if the factual allegations were proved, the court must take petitioner's factual allegations as true. The court does not determine at this stage whether the petitioner is entitled to discharge or any other form of remedy if habeas corpus relief is ultimately granted. The issuance of a writ of habeas corpus under this Rule is an intermediate step pursuant to 5 V.I.C. § 1304 which does not award any of the relief sought in the petition, but requires the respondent to file a return, responding to the petition.

V.I. H.C.R. 2(d)(1).

¶ 16    Applying these standards, the Court must analyze whether Frett's Petition meets his burden of stating a prima facie case, thereby shifting the burden to Respondents to establish that Frett's incarceration is lawful.

## ANALYSIS

¶ 17    While he fails to state how and when he became aware of the claims within the Greene Affidavit, Frett asserts that this newly discovered evidence reveals that the People "intentionally suppressed evidence, that contradicted testimony that it knew or should have known was false." Petition, at 1. The Petition asserts that by the Greene Affidavit, "Petitioner makes out a *prima facie* case for a Brady Violation, requiring at minimum a habeas hearing." *Id.* at 3.

¶ 18    The Supreme Court has recently confirmed that newly discovered evidence may entitle an incarcerated petitioner to relief pursuant to 5 V.I.C. §1314(2).[11] "However, while a writ of habeas corpus may be granted based on newly discovered evidence, the standard that the evidence must meet is extremely high." *Fahie v. Gov't of the V.I.*, 2020 VI 6, ¶ 16, 73 V.I. at 451.

---

[11] Title 5 V.I. Code § 1314 provides:

If it appears on the return of the writ that the prisoner is in custody by virtue of process from any court or judge or officer thereof, such prisoner may be discharged in any of the following cases, subject to the restriction of section 1313 of this title:

(1) When the jurisdiction of such court or officer has been exceeded.

(2) When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to a discharge.

(3) When the process is defective in some matter of substance required by law rendering such process void.

(4) When the process, though proper in form, has been issued in a case not allowed by law.

(5) When the person having custody of the prisoner is not the person allowed by law to detain him.

(6) Where the process is not authorized by any order, judgment or decree of any court, nor by any provision of law.

(7) Where a party has been committed on a criminal charge without reasonable or probable cause.

5 V.I.C. § 1314.

¶ 19    The habeas petitioner in *Fahie* presented a claim similar to Frett's here. In that case, the basis for the petition was purportedly newly discovered evidence in the form of a sworn statement from an individual who recanted his prior statement to the VIPD, and asserted that on the day of the shooting he saw Fahie's co-defendant with a gun matching the one used in the shooting and that Fahie's co-defendant told him that "he was going to 'get' that 'punk' 'Omari' for robbing his mother." *Id.* 2020 VI 6, ¶ 7, 73 V.I. at 447.

¶ 20    In his habeas petition, Fahie argued that he was entitled to relief because the newly discovered sworn statement showed that he was actually innocent of the murder of which he had been convicted. Although here Frett frames his argument as seeking relief for a *Brady* violation in that the People "intentionally suppressed evidence," Frett agues his actual innocence ("Auriel Frett did not kill Gabriel Lerner"), claiming that the Greene Affidavit shows that "the People knowingly allowed Southwell to commit perjury" when Southwell testified "that it was Frett who killed Lerner and not him." Petition, at 1.

¶ 21    In *Fahie*, the Supreme Court affirmed the trial court's denial of Fahie's petition for issuance of a writ of habeas corpus. "For newly discovered evidence to 'entitle' a petitioner to discharge, the evidence must be so conclusive and so persuasive that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 2020 VI 6, ¶ 17, 73 V.I. at 451. The Supreme Court reviewed the stringent standards of several states in responding to habeas claims that newly discovered evidence showed that the convicted petitioner was actually innocent. "While states vary somewhat in the standards used to find actual innocence, Fahie's evidence does not come close to meeting any of them; therefore, in this opinion we do not identify the specific standards to be used in the Virgin Islands." *Id.* 2020 VI 6, ¶ 17, 73 V.I. at 452, n.6.

¶ 22    Similarly, in this case, Frett's newly discovered evidence of the Greene Affidavit does not come close to establishing that he is entitled to habeas relief. In its entirety, the Greene Affidavit, dated and filed October 19, 2022, almost exactly 14 years after the incidents it describes, states:

"I, GEORGE GREENE, being duly sworn according to law upon my oath hereby declare that the contents of the following statements are true and to the best of my knowledge and belief.

1. I am over 18 years old and of sound mind.

2. I am a resident of St. Croix, U.S. Virgin Islands.

3. I make this affidavit based on my own personal knowledge and information.

4. I was formerly employed by the Virgin Islands Police Department as a forensic officer.

5. Southwell, while being detained on charges that he killed Lerner, was bragging about how he outsmarted police in the concealment of the firearm used in the murder, where it was hidden and how stupid the officers were in not finding it.

6. This information was relayed to me by a jailhouse informant.

7. Based on this information, we decided to do a more extensive search of the vehicle and found the firearm in question underneath the carpet in the trunk of the vehicle.

8. The vehicle had been searched and inventoried before, therefore, had this information not been known to me or other officers, more likely than not the firearm would not have been found."

¶ 23    Fundamental inconsistencies with facts in the record and reliance upon inadmissible hearsay are readily apparent deficiencies within the Greene Affidavit. The Petition goes beyond the substance of the Affidavit to offer facts not set out in the Affidavit. The Petition, but not the Affidavit, claims that an unnamed jailhouse informant "contacted Sergeant Greene" and provided information which led to the discovery of the firearm that had been used to murder Lerner "some six weeks later" following Southwell's arrest and detention. Petition, at 3 ¶¶ 8, 11.

¶ 24    VIPD chief investigator for the Lerner homicide, Detective Sergeant Jason Marsh, testified in Frett's May 19, 2010, detention hearing that Southwell provided information to police on October 28, 2008, the day of his arrest, that led to the recovery of the Bursa .380 firearm the same day. Forensic testing later revealed that the slug retrieved from Lerner's skull had been fired from that same firearm recovered from Lerner's vehicle. *See Frett*, 2010 V.I. LEXIS 44, at *3-6.

¶ 25    The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, applicable to the Virgin Islands through the Revised Organic Act,[12] requires the prosecution to disclose evidence favorable to the accused. In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

¶ 26    "To prevail on a *Brady* claim, the defendant must show that the evidence was (1) suppressed, (2) favorable, and (3) material to the defense." *People v. Ward*, 55 V.I. 829, 842 (V.I. 2011) (quoting *Bowry v. People*, 52 V.I. 264, 274 (V.I. 2009)).

¶ 27    At this stage, the review assesses whether the Petition "states facts that, if true, would entitle the petitioner to discharge or other relief." V.I. H.C.R. 2(b)(1). For the purposes of the Petition's *Brady* claim, the facts of the Petition and the Greene Affidavit are accepted as true. That is, as to the first *Brady* factor, the People failed to disclose to Frett that, after his arrest, Southwell bragged to a fellow inmate that he had outsmarted police by hiding the firearm used in Lerner's murder, and that the inmate contacted Sergeant Greene who searched and found the weapon in the trunk of Lerner's car six weeks after it had been impounded.

---

[12] Revised Organic Act of 1954 § 3; 48 U.S.C. § 1561.

¶ 28    The Petition implies that the suppressed information was favorable to Frett, arguing that had Frett known that Southwell had hidden the weapon and mocked police for not finding it, Frett's trial counsel could have more effectively presented his argument that Southwell's trial testimony was false and that it was Southwell, not Frett, who fired the shot that killed Lerner.[13]

¶ 29    The materiality to the defense of the alleged suppressed evidence is not apparent and difficult to discern from the Petition. Even if Frett was unaware until after the June 11, 2015 conclusion of his second trial of the new evidence presented through the Greene Affidavit, since at least the May 19, 2010 detention hearing prior to his first trial, Frett learned that Southwell had revealed to chief investigator Detective Marsh the location of the murder weapon on October 28, 2008, the day of his arrest.

¶ 30    The Petition argues that "[t]he Government did not reveal how it seized the firearm some six weeks later, nor did it disclose the results of forensic testing." Petition, at 3, ¶ 11. Frett appears to claim that the new evidence of the Greene Affidavit was material to his defense because the retrieved firearm "was tested for DNA and fingerprints, after this test, the firearms charges against Frett were dismissed" but the Government continued to prosecute Southwell on the firearms charges. *Id.* ¶¶ 9-10. The Petition misstates the record. The People did not dismiss the firearms charges against Frett but tried him on those charges in Frett's first trial. The court dismissed those charges with prejudice for insufficiency of the prosecution's evidence following the conclusion of Frett's first trial. *See People v. Frett*, 55 V.I. 294 (V.I. Super. Ct. 2011). Following remand from Frett's successful appeal of the conviction in his first trial, the People filed a Second Amended Information that eliminated those firearms charges. Firearms charges against Southwell were dismissed as part of his plea agreement in ST-2010-CR-00382. Frett was neither tried for nor convicted of any firearms charges, such that the materiality to his defense of the claims in his Petition and the new evidence of the Greene Affidavit is illusory.

¶ 31    The Petition argues that the facts that Southwell "was aware of where the firearm was secreted" and that Southwell "was mocking law enforcement" constitute new evidence material to his defense in that it "would change the nature of Petitioner's closing argument, as well as the jury's evaluation of the evidence as to the First Degree Murder count." *Id.* at 5. In light of the complete record, such speculation does not rise to the level of materiality to the defense at trial.

¶ 32    The viability of the Petition's new evidence is further hampered by the fact that the Greene Affidavit relies upon the hearsay statements on an unidentified "jailhouse informant." Frett argues that he "will prove" through George Greene's testimony "that Southwell while being detained on

---

[13] In the Petition, Frett argues: "With additional evidence that the purported eyewitness 1) was aware of where the firearm was secreted, at a time when secreting the firearm was not necessary, and 2) the fact that the purported eyewitness was mocking law enforcement, would change the nature of Petitioner's closing argument, as well as the jury's evaluation of the evidence as to the First Degree Murder count." Petition, at 5.

charges that he killed Lerner, was bragging about how he outsmarted police in the concealment of the weapon, where it was hidden and how stupid the officers were in not finding it." *Id.* at 2, ¶ 7. Apart from the issue as to the materiality of this new evidence, it is unstated in the Petition how the substance of the unidentified inmate's hearsay statements to Greene can be admitted at any hearing.

¶ 33    Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." V.I. R. EVID. 801(c). Southwell's statements were allegedly made to an unnamed jailhouse informant who relayed the statements to George Greene. The statements are double hearsay, made by separate declarants outside of court to be offered for the truth of the matters asserted.

¶ 34    In an appeal arising from the denial of a motion for new trial alleging newly discovered inadmissible evidence, the Supreme Court declined to consider the substance of an affidavit not based upon the personal knowledge of the affiant, or on anything that he personally saw or heard. The affiant's "personal opinion" without supporting foundational facts was considered "specious and inadmissible speculation." *Rivera v. People*, 2023 VI 1, ¶ 85, 77 V.I. 514, 552 (V.I. 2023). Here, the Greene Affidavit presents the hearsay statement of an unnamed "jailhouse informant" relating what Southwell had told him. The Petition, based wholly on the substance of the Greene Affidavit, cannot be seen to present sufficient foundational facts to be considered anything other than speculation.[14]

¶ 35    Even if the hearsay statements in the Greene Affidavit were considered, taken as true, they are insufficient for Petitioner to establish a prima facie case for habeas corpus relief. "For newly discovered evidence to 'entitle' a petitioner to discharge, the evidence must be so conclusive and so persuasive that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Fahie v. Gov't of the V.I.*, 2020 VI 6, ¶ 17, 73 V.I. at 451.

¶ 36    The Petition, wholly based upon the substance of the Greene Affidavit, does not meet this standard. Accepting all of the factual allegations of the 2022 Greene Affidavit as true with reference to the events it describes that occurred in 2008, "the evidence is not conclusive; at best it provides counter-evidence to the evidence on which [Frett] was originally convicted, which the jury in a new trial would be required to weigh." *Id.* 2020 VI 6 ¶ 18, 73 V.I. at 452.

---

[14] In *Rivera*, the Court did not address the issue of whether presented "'evidence' that would ultimately be inadmissible in any trial may still establish that a new trial must be granted in the interest of justice. Rather, we leave the question open to be considered when presented by a truly exceptional set of circumstances." *Rivera v. People*, 2023 VI 1, ¶ 85, 77 V.I. 514, 552, n.26. The circumstances of Frett's Petition cannot be deemed truly exceptional in this habeas context, and that the interests of justice do not require that the inadmissible evidence presented by the Greene Affidavit serve as the foundation for habeas relief.

¶ 37    The veracity of Southwell's trial testimony, after he "cut a deal" with the People, was argued to the jury at trial. The suggestion that Southwell's testimony was not credible and that Southwell, not Frett, was the actual shooter who killed Lerner was presented at trial and evidently rejected by the jury.

¶ 38    As the presumption of innocence does not apply here, the burden is on Frett "of proving his innocence, not just raising doubt about his guilt." Because Frett "has not established that based on the new evidence provided he would 'probably' be acquitted, … he has not established a prima facie case for habeas corpus relief." *Id.*

¶ 39    Therefore, accepting all Petitioner's claims and the Greene Affidavit's factual contentions as true, Petitioner has failed to state a prima facie case for relief. In light of the foregoing, it is hereby

ORDERED that Petitioner's Verified Petition for Habeas Corpus is DENIED, and this matter is CLOSED.

SO ORDERED this __30__ day of July, 2024.

DOUGLAS A. BRADY, JUDGE

**ATTEST:**
TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Sup.
7/31/2024